J-S31026-16

2016 PA Super 260

JOHN M. GREGURY AND BARBARA J. ROBEY,

        Appellants

        v.

SHIRLEY M. GREGURAS AND ESTATE OF ADOLF GREGURAS, AND JAMES T. YINGST AND GUTHRIE, NONEMAKER, YINGST & HART

IN THE SUPERIOR COURT OF PENNSYLVANIA

No. 1467 MDA 2015

Appeal from the Judgment Entered August 17, 2015
in the Court of Common Pleas of York County
Civil Division at No(s): 2009-SU-003228-01

BEFORE:  SHOGAN, OTT, and STRASSBURGER,* JJ.

OPINION BY STRASSBURGER, J.:      **FILED NOVEMBER 22, 2016**

John M. Gregury and Barbara J. Robey (collectively, Appellants), appeal from the judgment entered on August 17, 2015, following the trial court's entry of nonsuit in favor of Shirley M. Greguras (Shirley), the Estate of Adolf Greguras, James T. Yingst (Yingst), and Guthrie, Nonemaker, Yingst & Hart (GNYH) (collectively Appellees).  After careful consideration, we vacate the judgment, reverse the order granting Appellees' nonsuit, and remain for proceedings consistent with this opinion.

Appellants are the children of Adolf Greguras (Decedent).  Shirley is the widow of Decedent[1] and Appellants' stepmother.  Yingst, who prepared Decedent's March 2, 2000 will, is an attorney with the law firm of GNYH.

---

[1] Shirley was married to Decedent for approximately 35 years.  **See** N.T., 3/16/2015-3/18/2015, at 395.

\* Retired Senior Judge assigned to the Superior Court.

The underlying action stems from a dispute over the distribution of Decedent's assets. Specifically, "[Appellants] believe they are entitled to the money held jointly by [Shirley and Decedent] and that [Shirley] and/or [] Yingst[2] committed some sort of fraud or breach of duty that has prevented them from accessing those assets." Trial Court Opinion Denying Appellants' Motions for Post-trial Relief, 8/10/2015, at 3 (unnumbered). Appellants filed a complaint alleging *inter alia*, fraud, breach of contract, and intentional infliction of emotional distress.

The procedural history was summarized by the trial court in earlier opinions concerning motions for summary judgment filed by Appellees:[3]

> **The Will provided for [Shirley] to receive[ half] of all [] Decedent's property while the [Appellants] were each to receive one fourth] of all his property.**[2] [However, [Appellants] allege that Decedent had written an[d]
>
>> 2 **At the time of Decedent's death, he and [Shirley] held various financial accounts jointly between them and thus title passed to [Shirley] by operation of law.** Also at [the] time of Decedent's death, the marital residence of Decedent

---

[2] Appellants aver they enjoy third-party beneficiary status, which allow them to initiate an action against Yingst. **See** Trial Court Opinion, 2/9/2011, 2 (addressing preliminary objections filed by Yingst and GNYH) ("Finally, [Appellants] allege that they were the express, intended third-party beneficiaries of any and all contractual relations between [Yingst and GNYH] and [D]ecedent, and therefore, this confers standing to bring such claims.").

[3] The trial court filed separate opinions denying the two separate summary judgment motions filed by Shirley and Yingst/GNYH. These opinions contain almost identical discussions of the factual and procedural history of this case. We quote from the trial court's opinion addressing Shirley's summary judgment motion. Additional facts set forth in the trial court's opinion addressing Yingst/GNYH's summary judgment motion are bracketed.

and [Shirley] was owned ½ by Decedent and [Shirley] as tenants by the entireties and ¼ each by [Appellants] as joint tenants with the right of survivorship.

oral communications to his children/[Appellants] and others as to his intentions and his understanding of his estate plan, including death bed assurances in the presence of [Appellee] Shirley and [Appellants. Appellants] allege that they were expressly or impliedly the beneficiary of the legal services agreement of Decedent and [] Yingst.]

Following Decedent's death, the real estate became the subject of a partition action between [Shirley] and the [Appellants], which ultimately culminated in the sale of the home and distribution of the proceeds among the parties.[4] Decedent's personal effects and the couple's household property remained in the marital residence as [Shirley] continued to live in the home for approximately nine (9) months following Decedent's death. [Appellants] entered the marital residence segregating household items in a single room and eventually placing them in a locked P.O.D. storage container. Efforts to settle disagreements over the various items of personal property eventually broke down, and [Appellants] subsequently filed their complaint.

[Appellants] initiated this action by praecipe for writ of summons on June 26, 2009, and their complaint was filed on September 28, 2009 after a praecipe for rule to file a complaint was served by GNYH. GNYH filed preliminary objections to the complaint and on May 26, 2010, the Honorable John W. Thompson, Jr. dismissed the Complaint without prejudice giving [Appellants] forty-five (45) days to file an amended complaint. On September 1, 2010, [Appellants] filed an amended complaint. The Amended Complaint contained various claims including: Count I-Equitable Claims - Constructive Trust, Probate and Accounting; Count II Fraud; Count III-Breach of Contract;

---

[4] Under the October 25, 1983 deed, Decedent and Shirley transferred the real property, for consideration of One Dollar ($1.00), to themselves to hold an undivided one-half (1/2) interest as tenants by the entireties, and to Appellants Gregury and Robey to each hold an undivided one-fourth (1/4) interest as joint tenants with a right of survivorship. Deed, 10/25/1983; Appellants' Exhibit 4.

Count IV-Professional Negligence; Count V-Intentional Infliction of Emotional Distress; and a request for attorney's fees and punitive damages. However, only counts I, II, V, and the request for attorney's fees and punitive damages were alleged against [Shirley]. [Counts II, III, IV, V, and the request for attorney's fees and punitive damages were alleged against [Yingst and GNYH.]]

Thereafter, GNYH filed preliminary objections to the Amended Complaint. On February 9, 2011, the Honorable John W. Thompson, Jr.[,] sustained in part and denied in part GNYH's preliminary objections dismissing Count IV-Professional Negligence and dismissing attorney's fees. The rest of the amended complaint claims were allowed to proceed. On March 14, 2014, [Shirley] filed this motion for summary judgment with brief in support requesting oral argument. On April 30, 2014, [Appellants] filed a response in opposition with brief. On April 24, 2014, [Shirley] listed this matter for one judge disposition[] which was assigned to the Honorable John W. Thompson, Jr. on May 1, 2014.

[Shirley's] motion for summary judgment will be denied[.]

Trial Court Opinion, 8/13/2014, at 1–3 (addressing summary judgment motion filed by Shirley M. Greguras) (emphasis added, unnecessary capitalization omitted); Trial Court Opinion, 8/13/2014, 1–3 (addressing summary judgment motion filed by Yingst and GNYH).

The case proceeded to a jury trial on March 16, 2015.[5] At the conclusion of Appellants' case, [Appellees] moved for nonsuit which was

_____

[5] The claims that proceeded to trial were: Count I-Equitable Claims - Constructive Trust, Probate and Accounting; Count II-Fraud; Count III Breach of Contract; Count V-Intentional Infliction of Emotional Distress; and a request for punitive damages.

- 4 -

granted by the trial court. Post-trial motions were denied and this timely-filed appeal followed.[6]

The gist of Appellants' case, based upon the fact that Decedent's property was held in joint accounts that passed to Shirley outside the will, is that "Yingst and/or [Shirley], negligently or fraudulently thwarted the express intent of [Decedent] *as stated in the will* by either failing to adequately advise [Decedent]; or by [Shirley] manipulating assets *after the will was drafted*." Appellants' Brief at 9 (italics in original). Appellants assert "their father could not possibly have intended they receive '1/4 of nothing.'" ***Id.*** at 9–10.

Appellants state the following issues for this Court's consideration, which we have re-ordered for ease of disposition:

1. Did the trial court err in denying reconsideration of the *in limine* and trial exhibit orders as evidence of testamentary intent[?]

2. Did the trial court err in denying reconsideration of the *in limine* and trial exhibit orders regarding severe emotional distress of [] Gregury?

3. Did the trial court err in allowing [Shirley] to waive attorney[-]client privilege at trial after asserting it throughout discovery and pre-trial processes?

4. Did the trial court err in granting [Appellees'] motion for nonsuit as to all counts and all defendants, where the motions merely sought to relitigate legal issues rejected in summary judgment?

_____

[6] Appellants timely complied with the trial court's order to file a Pa.R.A.P. 1925(b) statement of errors complained of on appeal.

Appellant's Brief at 3 (suggested answers and unnecessary capitalization omitted).

We first examine Appellants' argument that the trial judge, the Honorable David Grine, erred in refusing to admit oral and written evidence of Decedent's testamentary intent and testimony and medical records of Gregury, both of which had been precluded by a pre-trial order granting the Appellees' motions *in limine*. **See** Appellants' Brief at 22, 32.

> When reviewing rulings on motion *in limine*, we apply the scope of review appropriate to the particular evidentiary matter. A motion *in limine* is a procedure for obtaining a ruling on the admissibility of evidence prior to or during trial, but before the evidence has been offered. In reviewing a challenge to the admissibility of evidence, we will only reverse a ruling by the trial court upon a showing that it abused its discretion or committed an error of law.

*Rachlin v. Edmison*, 813 A.2d 862, 869 (Pa. Super. 2002) (citations omitted).

Prior to trial, based upon Appellants' Exhibit Chart provided to counsel at the pre-trial conference, Shirley and Yingst/GNYH each filed a motion *in limine* to preclude certain handwritten documents[7] and oral testimony that Appellees anticipated Appellants would seek to introduce at trial to show

---

[7] Appellants describe the handwritten documents as "documents which identified [the] Decedent's assets and one on which there was a handwritten calculation of what half of those assets would be." Appellants' Brief at 10. **See also** Appellants' Appendix to Appellants' Response in Opposition to Motions for Summary Judgment, Nos. 28-30.

Decedent's testamentary intent. Appellees also sought to preclude medical testimony and medical records of Gregury.

The Honorable Stephen P. Linebaugh granted the Appellees' motions *in limine*, stating:

> [Appellants] are precluded from presenting any unauthenticated handwritten documents including but not limited to those handwritten documents listed in [Appellants'] Exhibit Chart at P8 and P9 and in [Appellants'] appendix to their Motion for Summary Judgment at S28-S30. Such documents are hearsay and irrelevant to this matter.
>
> [Appellants] are precluded from presenting an[y] oral testimony related to testamentary intent of [] Decedent. Such testimony violates the parole [*sic*] evidence rule.
>
> [Appellants] are precluded from presenting any medical testimony including but not limited to medical testimony concerning emotional distress because [Appellants] have no expert.

Order Granting Motions *in Limine*, 3/6/2015.

Judge Linebaugh reiterated these rulings in a separate order granting Appellees' objections to trial exhibits:

> [Appellants] are precluded from presenting the handwritten documents identified as P8-P9 as trial exhibits. We have already precluded the presentation of these documents in our Order granting the Omnibus Motions *in Limine*.
>
> …
>
> [Appellants] are precluded from presenting as trial exhibits any medical records, prescriptions, mental health evaluations, progress notes, and psychiatric evaluations, identified as P28-P50, because Appellants have no expert witness.

Order Granting Objections to [Appellants'] Trial Exhibits, 3/6/2015.

While the coordinate jurisdiction rule applied to Judge Linebaugh's pretrial orders,[8] Appellants' counsel, at trial, made a supplemental proffer of authentication evidence for the handwritten documents. *See* N.T., 3/16/2015-3/18/2015, at 406-407. The trial court rejected the proffer.

In denying post-trial motions, Judge Grine opined that the motions *in limine* were properly granted:

> Prior to trial, President Judge Stephen P. Linebaugh ruled on several motions *in limine.* [The trial court] adhered to those rulings as they were not in error. First, [Appellants] were properly precluded from presenting unauthenticated handwritten documents as those documents constituted hearsay and were irrelevant to this matter. Second, [Appellants] were properly precluded from presenting oral testimony related to the testamentary intent of [] Decedent. Such testimony would violate the parole [*sic*] evidence rule. Third, [Appellants] were properly precluded from presenting medical testimony concerning emotional distress because [Appellants] had no expert to provide such testimony.

Trial Court Opinion, 8/10/2015, at 3 (unnumbered). We address the preclusion of oral testimony, handwritten documents, and medical records, sequentially.

In this case, Decedent's will provided:

---

[8] "Generally, the coordinate jurisdiction rule commands that upon transfer of a matter between trial judges of coordinate jurisdiction, a transferee trial judge may not alter resolution of a legal question previously decided by a transferor trial judge." *Zane v. Friends Hospital*, 836 A.2d 25, 29 (Pa. 2003). "Departure from the rule is allowed in 'exceptional circumstances' when there has been a change in the controlling law or where there was a substantial change in the facts or evidence." *Id.* "In sum, while a judge must in most circumstances defer to the prior decision of another judge of coordinate jurisdiction, he or she is not required to do so in the limited and exceptional situation in which, *inter alia*, the prior judge's order is clearly erroneous and would result in a manifest injustice." *Id.* at 30.

SECOND: I give all of my property, real, personal and mixed, of whatsoever kind and wheresoever situate, as follows:

A. One-half (1/2) to my wife, Shirley M. Greguras. Should my said wife predecease me, her share of my said property shall be distributed equally to my two (2) children, Barbara J. Robey and John M. Gregury, and my wife's daughter, Sharon L. Beavers.

B. One-fourth (1/4) to my daughter, Barbara J. Robey. Should my said daughter predecease me, her share of my said property shall be distributed equally to my son, John M. Gregury, and my wife's daughter, Sharon L. Beavers.

C. One-fourth (1/4) to my son, John M. Gregury. Should my said son predecease me, his share of my said property shall be distributed equally to my daughter, Barbara J. Robey, and my wife's daughter, Sharon L. Beavers.

Will of Adolf Greguras, 3/2/2000, at 1.

Regarding the precluded oral testimony of Decedent's testamentary intent, Appellants argue the evidence was admissible pursuant to the parol evidence rule as set forth in *Herr Estate*, 161 A.2d 32 (Pa. 1960):

A Court interpreting a will or a contract can always consider the surrounding circumstances in order to ascertain the intention and the meaning of the parties. Moreover, where an ambiguity exists, parol evidence is admissible to explain or clarify or resolve the ambiguity, irrespective of whether the ambiguity is created by the language of the instrument or by extrinsic or collateral circumstances.

*Id.* at 34 (citations omitted). *See* Appellants' Brief at 23. Relying on the above quoted legal principles, Appellants contend that,

[w]hile the will is clear and supports the position of the [Appellants], ambiguity was created by the fact that notwithstanding the clear terms of the will, [Appellees] claimed all valuable property was held by entireties at the time of death

and by operation of law the assets admitted to have been intended to pass through the will did not pass through it.

Appellants' Brief, at 23–24.

"An ambiguity in a will must be found without reliance on extrinsic evidence; extrinsic evidence is admissible only to resolve, not create, an ambiguity." *In re Estate of Harper*, 975 A.2d 1155, 1162 (Pa. Super. 2009) (citation omitted). "There are two types of ambiguity: patent and latent." *In re Estate of Schultheis*, 747 A.2d 918, 923 (Pa. Super. 2000) (citation omitted). Appellants' argument suggests a latent ambiguity, which this Court has described as follows:

> A latent ambiguity arises from collateral facts which make the meaning of a written document uncertain, although the language appears clear on the face of the document. To determine whether there is an ambiguity, it is proper for a court to hear evidence from both parties and then decide whether there are objective indications that the terms of the document are subject to differing meanings.
>
> Where a latent ambiguity exists we have repeatedly held that parol evidence is admissible to explain or clarify the ambiguity, irrespective of whether the latent ambiguity is created by the language of the will or by extrinsic or collateral circumstances. Where a latent ambiguity exists, the court may resort to parol evidence (such as testimony of the scrivener) to determine [] decedent's true intent. **One limitation to the foregoing is that extrinsic evidence of surrounding facts must only relate to the meaning of ambiguous words of the will. It cannot be received as evidence of the testator's intention independent of the written words employed.**

*Id*. (citations, quotations and brackets omitted) (emphasis added).

Here, Appellants concede that Decedent's will "is clear."  Appellants' Brief at 23. In fact, Decedent's will specified that Appellants would each

- 10 -

receive a quarter share of his property. However, Appellants believe an ambiguity exists because Decedent's assets did not pass through the will. We disagree.

Decedent's joint accounts with Shirley had a statutory presumption of a right of survivorship under the Multi-Party Account Act (MPAA),[9] and there is no statutory provision giving a will primacy over the right of survivorship presumed by the MPAA. **In re Novosielski**, 992 A.2d. 89, 101 (Pa. 2010). The **Novosielski** Court stated: "One who knowledgeably creates a joint account with another arguably does so with the present intent to employ the account's survivorship characteristic in substitution for a testamentary device." **Id.** at 102 (citation omitted).

Here, Appellants do not challenge Shirley's entitlement under the MPAA.[10] Rather, Appellants assert that Decedent did not intend for his assets to pass outside of the will, and that the oral and handwritten documents would show that Decedent's intent was for all accounts to pass under the will and that his intent was frustrated by Appellees. However, Appellants cannot rely on extrinsic evidence to create an ambiguity in the Will. **Harper, supra**; **Schultheis, supra.** Here, the terms of the will were clear and unambiguous and, therefore, we agree with the trial court that oral

---

[9] 20 Pa.C.S. §§ 6301-6306.

[10] The presumption of the right of survivorship can be rebutted by clear and convincing evidence of a different intent. **In re Novosielski**, 992 A.2d at 106–107.

testimony about Decedent's testamentary intent was not admissible under the parol evidence rule.

Moreover, regarding the proffered handwritten notes, we find no error in Judge Linebaugh's determination, which was adhered to by the trial court, that these notes were inadmissible. Under the rules of evidence, an out of court statement that is offered for the truth of the matter asserted is excluded as hearsay. Pa.R.E. 801(c). Statements include an oral or written assertion. Pa.R.E. 801(a). While the hearsay rule is subject to exceptions, none appears applicable here. The documents at issue were unsigned, undated, and without a clear purpose. Nevertheless, Appellants were offering these handwritten documents as proof of Decedent's testamentary intent, that is, the truth of the matter asserted. As such, they clearly constituted hearsay.

There were other problems with the documents. Although Appellants proffered additional testimony to identify the handwriting and stationery as Decedent's for authentication purposes, without evidence to show when or why the documents were written, the relevancy of the documents is impossible to determine. *See* Pa.R.E. 401 ("Evidence is relevant if: (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action."); Pa.R.E. 402 ("All relevant evidence is admissible, except as otherwise provided by law. Evidence that is not relevant is not admissible.").

Accordingly, based on our review, we conclude preclusion of oral testimony and the handwritten documents of Decedent's testamentary intent was proper, and Appellants' first argument presents no basis upon which to grant relief.

Nor do we find merit to Appellants' contention that the trial court erred in precluding medical evidence of Gregury's emotional distress for lack of an expert opinion. As mentioned above, Judge Linebaugh granted the Appellees' motions *in limine*, and Judge Grine agreed that "[Appellants] were properly precluded from presenting medical testimony concerning emotional distress because [Appellants] had no expert to provide such testimony." Trial Court Opinion, 8/10/2015, at 3 (unnumbered).

The Pennsylvania Supreme Court has explained, "Given the advanced state of medical science, it is unwise and unnecessary to permit recovery to be predicated on an inference based on the defendant's 'outrageousness' **without expert medical confirmation** that the plaintiff actually suffered the claimed distress." ***Kazatsky v. King David Memorial Park****,* 527 A.2d 988, 995 (Pa. 1987) (emphasis added). Furthermore, this Court has held the requirement of expert testimony relates, "both as to the fact of the distress itself **and as to the causation element**." ***Wecht v. PG Publ. Co***, 725 A.2d 788, 791 (Pa. Super. 1999) (emphasis added). While Appellants insist Gregury's medical records are sufficient "medical evidence" that "showed [] Gregury suffered extreme emotional distress *related to the conduct at*

*issue*," we reject that argument in light of the above-cited authority. Consequently, Plaintiffs' second claim fails to warrant relief.[11]

Next, we address Appellants issue that the trial court erred in allowing Shirley to waive her attorney-client privilege at trial after asserting it throughout discovery and pre-trial processes. Specifically, Appellants argue that the effect of Shirley' waiver of her attorney-client privilege was "fundamental unfairness" and "undue surprise." Appellants' Brief at 29, 30. Appellants contend allowing Shirley to waive privilege left them

> with a "lady or the tiger" dilemma: opening the door and asking questions for which the answer was not know[n;] or having all witnesses including the expert commit to opinions on what happened (was it Yingst or [Shirley]), with [Appellees] free to concoct any claim of previously undisclosed privileged discussions, free of any risk of rebuttal given [Yingst's] convenient and suspicious failure to preserve the written notes

___

[11] Furthermore, based on the facts as presented, Appellants were in no way able to sustain a claim for intentional infliction of emotional distress. Irrespective of whether Appellants proffered an expert, Appellants have failed to set forth a cognizable claim for which relief could be sought. ***See Swisher v. Pitz,*** 868 A.2d 1228, 1230–31 (Pa. Super. 2005) (citations and quotations removed) ("Outrageous or extreme conduct [which must be proven to prevail on an intentional infliction of emotional distress claim] has been defined by the appellate courts of this Commonwealth as conduct that is so outrageous in character, so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in civilized society. [I]t has not been enough that the defendant has acted with intent which is tortious or even criminal, or that he has intended to inflict emotional distress, or even that his conduct has been characterized by 'malice,' or a degree of aggravation that would entitle the plaintiff to punitive damages for another tort."). ***See also Hoy v. Angelone***, 720 A.2d 745, 754 (Pa. Super. 1998) ("Cases which have found a sufficient basis for a cause of action of intentional infliction of emotional distress have had presented only the most egregious conduct.").

> which Yingst and [Shirley] admit were taken in their meeting
> with [Decedent].

Appellant's Brief at 31. At trial, after Appellees' counsel's opening statement had been presented, Appellants' counsel requested a mistrial or additional discovery based on the Appellees' counsel's indication that Shirley was waiving her attorney client privilege at trial.[12] The court, after hearing argument outside the presence of the jury, ruled: "Motion for mistrial denied and the [trial c]ourt is satisfied that the previous instructions regarding statements of counsel not being evidence cover the problem." N.T., 3/16/2015-3/18/2015, at 66–67.

In its opinion denying Appellants' post-trial motions, the trial court further explained:

> [Appellants] had requested a mistrial or time to conduct
> additional discovery because [Shirley] waived her attorney-client
> privilege. [Appellants] would argue that since she only waived
> the privilege before trial that they were so prejudiced as to
> warrant a mistrial or, alternatively, to require additional
> discovery. This case was commenced in 2009, and the [p]arties
> conducted discovery for six years, and that discovery was
> exhaustive. The privilege was [Shirley's] to invoke or waive at
> trial. She chose to waive her privilege. This was not improper
> and the [trial c]ourt correctly denied the request for mistrial or,
> in the alternative, additional discovery.

Trial Court Opinion, 8/10/2015, at 5 (unnumbered).

"Generally, the granting or refusal of a mistrial is a matter within the discretion of the trial judge, and his or her decision will not be overruled by an appellate court except for manifest, clear, or palpable error amounting to

---

[12] **See** N.T., 3/16/2015–3/18/2015, at 62–64.

an abuse of discretion." ***Bugosh v. Allen Refractories Co***., 932 A.2d 901, 914-15 (Pa. Super. 2007) (citation omitted). "As abuse of discretion is the standard of review in this matter, [it is this Court's] function to determine whether the trial court's decision to exclude [] testimony [] constituted unreasonableness, or partiality, prejudice, bias, or ill-will, or such lack of support so as to be clearly erroneous." ***Grady v. Frito-Lay, Inc.***, 839 A.2d 1038, 1046 (Pa. 2003). Such decisions "are within the sound discretion of the trial court. We may reverse only if we find an abuse of discretion or error of law." ***Cimino v. Valley Family Med.,*** 912 A.2d 851, 853 (Pa. Super. 2006) (citations omitted).

This Court is cognizant of the dearth of case law in this Commonwealth regarding this particular matter and therefore, it appears to be an issue of first impression. In disagreeing with the trial court and therefore finding Shirley's late waiver of her attorney-client privilege to be both prejudicial and fundamentally unfair, we are guided by the decisions of our sister states which have encountered this very issue.

In ***Seattle Nw. Sec. Corp. v. SDG Holding Co***., 812 P.2d 488 (Wash. App. 1991) the court held

> that when a party is asserting the attorney-client privilege, that party must make an election prior to any deadline for completion of discovery as to whether or not the privilege will be voluntarily waived at trial and, if the privilege is to be waived, provide to opposing counsel a statement of the subject matter of the testimony. If [a party] wishes to preserve the privilege during discovery, it cannot have it both ways.

*Id.* at 499. ***See also Int'l Tel. & Tel. Corp. v. United Tel. Co. of Florida***, 60 F.R.D. 177, 186 (M.D. Fla. 1973) ("Fundamental fairness and justice requires [*sic*] that if the defendant intends to waive the privilege at trial by the introduction of evidence within that privilege, then the defendant will be required to allow discovery with regard to matters material to that testimony."); ***Domako v. Rowe***, 475 N.W.2d 30, 33 (Mich. 1991) ( "[I]t is patently unfair for a party to assert a privilege during pretrial proceedings, frustrate rightful discovery by the other party, and then voluntarily waive that privilege at trial, thereby catching the opposing party unprepared, surprised, and at an extreme disadvantage. Thus the rule requires that a party choose between the existing privilege and the desired testimony. The party may not have both.").

In line with the holdings of our sister states, we find a party may not waive privilege at trial which was previously asserted during the discovery and pre-trial process. In concluding as such, we agree with Appellants that Shirley's late waiver of privilege essentially amounts to a trial by ambush, disallowing potentially relevant discovery and allowing undisclosed information to be presented at trial in direct contradiction to our long held standard that privilege may not be used as both a sword and a shield.[13]

---

[13] Additionally, we wholly disagree with Shirley's argument that Appellants should have sought "a motion *in limine* prior to trial to preclude introduction of any previously privileged information." Shirley's Brief at 18. We find it counter to both our well-established rules and judicial economy that parties be forced to file motions to preclude testimony and information that has

Denying Appellants' request for a mistrial or additional discovery created a situation that made it impossible for Appellants to cross-examine Appellees. As aptly stated by Appellants', Shirley late waiver "had a particularly deleterious effect on the ability of [Appellants] to present expert evidence, as the switch allowed essentially blind cross-examination on 'hypotheticals' which could be converted into non-hypothetical testimony in [Appellees] case." Appellants' Brief at 7.

Consequently, we conclude the trial court's allowance of Shirley's waiver at trial was an abuse of discretion. Furthermore, we find that under these circumstances, this allowance cannot be merely harmless error. *See Rettger v. UPMC Shadyside*, 991 A.2d 915, 923–24 (Pa. Super. 2010) (quoting *Harman ex rel. Harman v. Borah*, 756 A.2d 1116, 1122 (Pa. 2000) ("Consideration of all new trial claims is grounded firmly in the harmless error doctrine '[which] underlies every decision to grant or deny a new trial. A new trial is not warranted merely because some irregularity occurred during the trial or another trial judge would have ruled differently; the moving party must demonstrate to the trial court that he or she has suffered prejudice from the mistake.'").

In conclusion, we agree that the trial court properly disallowed evidence of the oral testimony, handwritten documents and evidence about Gregury's purported severe emotional distress. Further, we find the trial

---

previously been asserted as privileged or non-discoverable on the chance a party decides to renege at trial and introduce such information.

court committed reversible error by allowing Shirley to waive privilege after previously asserting the same during discovery. For this reason, we vacate the judgment, reverse the trial court's entry of non-suit, and remand for the allowance of additional discovery and a new trial.[14]

Judgment vacated. Order reversed. Case remanded for further proceedings consistent with this opinion. Jurisdiction relinquished.

Judge Shogan joins.

Judge Ott files a dissenting opinion.

---

[14] Because we remand Appellants' case for a new trial, their remaining issue, regarding the trial court's granting of Appellees' motion for nonsuit is moot. Nonetheless, we note that the denial of a motion for summary judgment does not preclude a trial court from subsequently granting a motion for nonsuit.

> In [**Parker v. Freilich**, 803 A.2d 738, 745 (Pa.Super.2002)], this Court held that **a trial court is permitted to consider an issue in a motion for compulsory nonsuit that had been previously addressed in denying a motion for summary judgment.** We explained that a motion for summary judgment and a motion for a compulsory nonsuit "are not motions of the same kind[.]" This is because the plaintiff's "presentation of her case in chief constitutes an intervening change in the facts that warranted a second consideration of the issue[.]" Therefore, as Appellant's argument is foreclosed by **Parker**, we conclude the trial court did not violate the law of the case doctrine in considering and granting Appellee's motion for a compulsory nonsuit.

**Neidert v. Charlie**, 143 A.3d 384, 391 (Pa. Super. 2016)(emphasis added, citations omitted).

Judgment Entered.

_Joseph D. Seletyn_

Joseph D. Seletyn, Esq.
Prothonotary

Date: <u>11/22/2016</u>