J-A07020-17

NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37

| KATHLEEN S. LUCCI, A MARRIED WOMAN | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| Appellant | |
| v. | |
| THE LILLIAN J. ROEHL REVOCABLE TRUST DATED MARCH 21, 2014, ALICE E. ROBERTS, AND PAUL S. ROBERTS, INDIVIDUALLY AND IN THEIR CAPACITY AS TRUSTEES OF THE LILLIAN J. ROEHL REVOCABLE TRUST | |
| Appellees | No. 1027 WDA 2016 |

Appeal from the Order Entered July 6, 2016
In the Court of Common Pleas of Beaver County
Orphans' Court at No: 04-14-1059

BEFORE:  OLSON, STABILE, and STRASSBURGER,[*] JJ.

MEMORANDUM BY STABILE, J.:           FILED:  SEPTEMBER 29, 2017

Appellant, Kathleen S. Lucci, appeals from the July 6, 2016 order granting the motion for nonsuit of Appellees, The Lillian J. Roehl Revocable Trust dated March 21, 2014, Alice E. Roberts, and Paul S. Roberts, individually and in their capacity as Trustees of the Lillian J. Roehl Revocable Trust.[1]  We affirm.

_____

[*] Retired Senior Judge assigned to the Superior Court.

[1] Appellant challenges the validity of a will and trust executed on March 21, 2014.  The order is therefore appealable pursuant to Pa.R.A.P. 342(a)(2),
(Footnote Continued Next Page)

The orphans' court's opinion sets forth the following facts and procedural history:

> Lillian J. Roehl, the Decedent, died testate on September 10, 2014. Pursuant to the terms of Decedent's Last Will and Testament dated March 21, 2014, the residue and remainder of Decedent's Estate was to be distributed to the Lillian J. Roehl Revocable Trust, (the "Trust"), also dated March 21, 2014. [Appellees], Alice E. Roberts and Paul S. Roberts, are the named Trustees, as well as the Co-Executors under the Decedent's Will. [Appellant] initially filed a letter with the Register of Wills on November 17, 2014, requesting that the March 21, 2014 Will and Trust not be admitted to probate until she had an opportunity to be heard. [Appellant] then filed a formal Caveat and Request for Certification the following day, requesting that a copy of a Will dated October 19, 2011 be admitted to probate instead of the March 21, 2014 Will. Under the October 19, 2011 Will, the Decedent bequeathed the remainder of her Estate, in equal shares, to [Appellant] and [Appellee], Alice E. Roberts. [Appellant] next filed a Complaint in Equity with the Prothonotary, challenging the validity of the Trust. Several months later, the file was properly transferred to the Register of Wills Office, after [Appellees] filed Preliminary Objections on March 19, 2015 challenging the jurisdiction of the Prothonotary, among other issues. Then, on July 24, 2015, [Appellant] filed a 'First Amended Complaint/Petition in Equity to Challenge the Validity of the Trust and Will of Lillian J. Roehl.' [Appellees] then filed new Preliminary Objections on September 3, 2015 challenging [Appellant's] standing and the sufficiency of the pleadings. Following, [Appellant] filed a Response to [Appellees'] Preliminary Objections on September 10, 2015. Both sides filed Briefs on the issues, and Oral Argument was held on October 29, 2015. The Court then issued an Order on October 30, 2015 overruling the Preliminary Objections.

> [Appellees] then filed an Answer and New Matter on November 10, 2015, again raising the issue of [Appellant's] standing. [Appellees] next filed a Motion for Protective Order

(Footnote Continued) ——————————

which provides that an appeal may be taken from an orphans' court order determining the validity of a will or trust.

and Stay of Proceedings on January 14, 2016, and then [Appellant] filed a Motion to Compel Production of Documents on January 25, 2016. In response, this Court issued a Decree on April 19, 2016 Ordering as follows: (1) granting [Appellees'] Motion for Protective Order; (2) denying [Appellant's] Motion to Compel Production of Documents, and (3) issuing a Citation upon [Appellant] to show cause why, if any she has, this cause of action should not be dismissed for lack of standing. Hearing on the Rule to Show Cause was held on July 6, 2016. After the hearing, based upon the weight and credibility of all evidence and testimony presented, this Court issued an Order granting [Appellees'] Oral Motion for Compulsory Nonsuit, finding [Appellant] does not have standing to pursue the cause of action.

Orphans' Court Opinion, 11/14/16, at 1-3 (capitalization in original).[2]

Appellant filed a premature appeal while several post-hearing motions remained pending. This Court quashed the appeal by order of August 16, 2016. The orphans' court denied Appellant's motions on August 23, 2016. This timely appeal followed.

Appellant raises seven assertions of error. Appellant's Brief at 3-4. The heart of the matter is Appellant's assertion that her challenge to the validity of the March 21, 2014 will and trust (the "2014 Will"), based on the alleged undue influence of Appellees Alice E. Roberts and Paul S. Roberts, remains viable despite the absence of an original copy of the October 19, 2011 Will (the "2011 Will"). Appellant's Brief at 4. After careful review, we

_____

[2] The procedural history of this case, as set forth in the orphans' court's opinion, is somewhat confusing. Because we do not believe any of the potential procedural irregularities implicate our jurisdiction, we will not address the issue sua sponte.

conclude the orphans' court correctly found that Appellant cannot overcome the presumption that the 2011 Will has been destroyed.

Our standard of review is as follows:

> With respect to this Court's standard and scope of appellate review in will contests, the Orphans' court decision will not be reversed unless there has been an abuse of discretion or a fundamental error in applying the correct principles of law. If the record supports the court's factual findings, we will defer to these findings and will not reverse absent an abuse of discretion. We are not constrained, however, to give the same deference to the court's legal conclusions.

In re Estate of Luongo, 823 A.2d 942, 951 (Pa. Super. 2003) (citations omitted), appeal denied, 847 A.2d 1287 (Pa. 2003).

As is evident from the foregoing, Appellant has an interest in the Decedent's estate if and only if the 2011 Will remains valid and enforceable. Appellant has two problems. First, the Decedent executed a 2014 will in which she expressly revoked all prior wills. Second, Appellant has been unable to produce an original copy of the 2011 Will. Rather, she is in possession of a photocopy. Appellant is not the Decedent's legal heir, and she would inherit nothing under the intestacy statute. Therefore, Appellant has nothing to gain in this action unless she can establish that her photocopy of the 2011 Will would be admissible to probate. The law on this issue is well-settled:

> Our Supreme Court has repeatedly held that where a [testator] retains the custody and possession of [his] will and, after [his] death, the will cannot be found, a presumption arises, in the absence of proof to the contrary, that the will was revoked or destroyed by the [testator]. To overcome that presumption,

the evidence must be positive, clear and satisfactory.[3] Moreover, to prevail over the presumption and establish the existence of a lost will, the proponent of the copy of the will must prove that: 1) the testator duly and properly executed the original will; 2) the contents of the will were substantially as appears on the copy of the will presented for probate; and 3) when the testator died, the will remained undestroyed or revoked by him.

In re Estate of Janosky, 827 A.2d 512, 519–20 (Pa. Super. 2003) (internal citations and quotation marks omitted).[4]

The existence of the 2011 Will implicates Appellant's standing[5] to challenge the 2014 Will and trust.

_____

[3] Appellant complains that the orphans' court misstated the applicable standard as clear and convincing evidence.  In light of the evidence produced at the hearing and the applicable standard as set forth in Jankosky, we conclude that any error in the court's misstatement of the standard was harmless.

[4] The Dissent argues the orphans' court erred in refusing to permit Appellant discovery of Decedent's medical records, as this evidence would have been relevant to whether the 2014 Will and trust were signed or whether the 2011 Will was destroyed or revoked as a result of undue influence.  Since Appellant first had to establish the validity of the 2011 Will under Janosky before being able to challenge the validity of the 2013 Will, we do not find the orphans' court preclusion of discovery of Decedent's medical records to be error. As discussed, infra, Appellant failed entirely to satisfy the first two prongs under Janosky that were not dependent upon examination of any of the Decedent's medical records.

[5] Appellant complains that, previously, another judge overruled Appellees' preliminary objections to her complaint, and one of those preliminary objections was to Appellant's standing.  Appellant therefore believes the prior judge found that Appellant had standing, and that the coordinate jurisdiction rule precludes a different finding at this juncture.  We disagree. The previous judge's ruling overruled preliminary objections based on the allegations in Appellant's complaint, including her allegation that the

(Footnote Continued Next Page)

A contestant to the validity of a will does not have standing to do so unless he can prove he would be entitled to participate in the decedent's estate if the will before the court is ruled invalid. To be aggrieved by the probate of a will, the contestant's share of the estate must be smaller because of probate or larger if probate is denied. Thus, it has been held that a non-relative beneficiary under an earlier will that the testator physically destroyed when he was fully competent to do so, leaves the legatee without any interest in the estate to challenge the testator's later will.

Luongo, 823 A.2d at 954 (emphasis in original).

The orphans' court directed Appellant to produce evidence to support her claim under the 2011 Will. The court conducted a hearing on July 6, 2016, which produced the following evidence. Michael Nalli, the attorney who prepared the 2014 Will, testified that the Decedent, despite her advanced age of 97 years, was clear about her wishes for the 2014 will.

(Footnote Continued) ─────────────────────

Decedent left Appellant a portion of her estate in the 2011 Will. The order on appeal entered a nonsuit based on evidence introduced at the July 6, 2016 hearing, upon which the orphans' court found that Appellant cannot substantiate her allegation that the 2011 Will remains in effect. The coordinate jurisdiction rule posed no bar to the orphans' court's order. To hold otherwise would be to relieve Appellant of the burden of overcoming the presumption that the prior will has been destroyed. Therefore, the order on appeal, entered at a later stage of the proceedings and based upon evidence that was not available at the earlier stage, does not implicate the coordinate jurisdiction rule. Zane v. Friends Hosp., 836 A.2d 25, 29 (Pa. 2003).

Appellant also complains that the orphans' court erred in raising the issue of standing sua sponte. We observe that Appellees' defense continued to depend on the validity of the 2014 Will and the invalidity of the 2011 Will, despite their unsuccessful preliminary objections. Furthermore, as we just explained, the ruling on the preliminary objections did not relieve Appellant of the burden of overcoming the presumption that the 2011 Will had been destroyed.

N.T. Hearing, 7/6/16, at 15, 25. Appellees brought the Decedent to her meetings with Nalli, and were present in his office during the meeting, though they offered to step outside. Id. at 25-26, 67. According to Nalli, the Decedent spoke for herself and explained what she wanted. Id. at 16. Appellees did not speak for her. Id. Nalli was not concerned about the Decedent's testamentary capacity. Id. at 17. The Decedent's only observable impairment was that she was in a wheel chair. Id. at 18. Her knowledge of "her assets, the people affected, her comprehension of the documents was all good." Id. The Decedent wanted to create a trust in order to avoid the probate process. Id. at 27-28. Nalli said the Decedent brought him a copy of the 2011 Will (not the original) and told him she wanted to make changes to it. Id. at 19. Nalli testified that he advised the Decedent to destroy her old estate planning documents after having new documents prepared. Id. at 20.

Appellee Alice Roberts, the Decedent's niece and legal heir, testified that she lived in Sammamish, Washington, for approximately twenty years prior to 2013. Id. at 50, 59. Mrs. Roberts spoke by telephone with the Decedent several times per week during her time in Washington, but never visited. Id. at 50. She hired a cleaning service for Decedent in 2011, when she got word from Appellant that the Decedent was not taking care of her house. Id. at 60. When Mrs. Roberts moved to Beaver County to reside with the Decedent, the Decedent's house was cluttered and mouse infested.

Id. at 59-60. The Beaver County Department of Aging first visited the Decedent in 2011, but determined she was not in need of guardianship. Id. at 60-61. According to Mrs. Roberts, the Decedent stayed at a skilled care center for portions of 2014 due to breathing difficulties. Id. at 63-65.

Mrs. Roberts was aware of the 2011 Will, under which she was to receive half of the Decedent's estate, but she had no copy. Id. at 54, 63. Mrs. Roberts stated she did not destroy the original of the 2011 will at the direction of the Decedent.

Appellant testified that she lived across the street from the Decedent for 34 years. Id. at 107. The Decedent's sister and husband predeceased her by nearly two decades. Id. at 108-09. The Decedent's sister, while she was suffering from terminal cancer, asked Appellant to look after the Decedent after she died. Id. at 109. Appellant commonly went to the grocery store for the Decedent and transported her to various appointments. Id. at 110. Appellant testified that the Decedent's mental condition was deteriorating in 2014. Id. at 122-23. Rosemary Zagorski, is Appellant's sister-in-law and a long-time neighbor of both Appellant and the Decedent. Id. at 88. Zagorski confirmed that Appellant provided assistance to the Decedent, especially after the Decedent would no longer leave her house. Id. at 90. Zagorski testified that the Decedent's memory was foggy in 2014, and that she repeated the same questions every few minutes. Id. at 93. Zagorski also testified that, in April of 2014, the Decedent told her

Appellant was like the daughter the Decedent never had, and that Appellant would get half of the Decedent's estate. Id. at 93-94, 98-99.

In essence, Appellant claims that the 2014 Will is the product of undue influence by Appellees, and that the Decedent lacked the capacity to execute the 2014 Will. Appellant can benefit from invalidating the 2014 Will if and only if she can establish that the 2011 Will was not destroyed. At the conclusion of the July 6, 2016 hearing, Appellant's counsel argued that the Decedent, in her statement to Zagorski, orally republished the 2011 Will:

> [APPELLANT'S COUNSEL]: But I would say that more importantly the burden that you have set for us to establish we have met by the testimony of Ms. Zagorski. She testified that –
>
> THE COURT: How's that?
>
> [APPELLANT'S COUNSEL]: An oral republication of her 2011 will. [Zagorski] indicated that [the Decedent] told her that [Appellant] would receive half of the bounty of her estate after the execution of the March will. I would submit, Your Honor, that's at least overcoming the hurdle to get us to the full-blown hearing.
>
> THE COURT: [Appellant's counsel], you have not presented one witness to even tell me that they saw a signed will signed by [the Decedent] in 2011, not one witness.
>
> [APPELLANT'S COUNSEL]: We think that the document attached to the complaint speaks for itself.
>
> THE COURT: The document attached to the complaint is a photocopy.
>
> [APPELLANT'S COUNSEL]: That's correct. We cannot locate the original.
>
> THE COURT: And you haven't had one witness who has even been able to testify that that original existed any day after October 19, 2011; is that correct?

[APPELLANT'S COUNSEL]: We don't know, yes.

THE COURT: Where is the clear and convincing evidence?

[APPELLANT'S COUNSEL]: Again my argument would be an oral republication. That's all I can tell you.

Id. at 165-66.

As set forth above, Appellant was required to prove that the 2011 Will was duly executed, that Appellant's copy fairly represents the contents of the original, and that the original has not been destroyed. Appellant produced no evidence in support of the first two prongs, and the orphans' court credited Nalli's testimony that the Decedent duly executed the 2014 Will. Nalli testified that the Decedent spoke for herself during her meetings with Nalli, and that she was clear about her intentions. Nalli testified that he advised the Decedent to destroy any prior estate planning documents, and the 2014 Will expressly revoked all prior wills. In summary, the record clearly supports a finding that the Decedent revoked and destroyed the 2011 Will.

Appellant protests that the orphans' court improperly denied Appellant's request for discovery of the Decedent's medical records. Appellant hopes that the medical records would support Appellant's belief that the Decedent was suffering from memory loss, and thereby bolster Appellant's evidence of the Decedent's compromised mental state and

undercut Nalli's account of the Decedent's coherence. This rationale seems to be inconsistent with Appellant's oral republication argument.[6] If the Decedent had sufficient capacity to republish a prior will, then she also had sufficient capacity to change it. Furthermore, evidence of age-related memory loss would not require the orphans' court to dismiss Nalli's testimony as a total fabrication. The orphans' court could have believed that the Decedent suffered from some age-related short-term memory loss—as per the testimony of Appellant and Zagorski—and still credited Nalli's testimony that the Decedent was sufficiently clear about her wishes for her estate.[7]

In light of all of the foregoing, we discern no error in the orphans' court's order.

Order affirmed.

_____

[6] We observe that Pennsylvania statutory law prohibits oral republication:

> If, after the making of any will, the testator shall execute a later will which expressly or by necessary implication revokes the earlier will, the revocation of the later will shall not revive the earlier will, unless the revocation is in writing and declares the intention of the testator to revive the earlier will, or unless, after such revocation, the earlier will shall be reexecuted. Oral republication of itself shall be ineffective to revive a will.

20 Pa.C.S.A. § 2506 (emphasis added).

[7] Appellant complains that the orphans' court erred in deeming Zagorski a biased witness. As noted above, we will not interfere with the orphans' court's factual findings so long as the record supports them. Luongo, 823 A.2d at 951.

Judge Olson joins this memorandum.

Judge Strassburger files a dissenting memorandum.


Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date:  9/29/2017