J-A23014-18

NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37

| | | |
|---|---|---|
| IN RE: ESTATE OF MARY D. FRANO NOREEN M. SWANSON, ELAINE B. WEHNER GACZKOWSKI, BEVERLEY J. FRANO BURKETT AND GORDON F. FRANO, CO-EXECUTORS | : : : : : : : : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| APPEAL OF: ELAINE B. WEHNER GACZKOWSKI, BEVERLEY J. FRANO BURKETT AND GORDON F. FRANO, REMAINING LIVING CO-EXECUTORS OF THE ESTATE OF MARY D. FRANO | : : : : : | No. 1680 WDA 2017 |

Appeal from the Order Entered October 10, 2017
In the Court of Common Pleas of Clearfield County Orphans' Court at
No(s): 95-284 O.C.

BEFORE: BOWES, J., SHOGAN, J., and STABILE, J.

MEMORANDUM BY BOWES, J.: FILED APRIL 30, 2019

Elaine B. Wehner Gaczkowski, Beverley J. Frano Burkett, and Gordon F. Frano, the co-executors of the Estate of Mary D. Frano, appeal from the order that, inter alia, dismissed the defense of laches and required the Estate to convey certain real property to Eagle Environmental, LP ("Eagle").[1] We affirm.

This case has a long and convoluted history, much of which we need not revisit. Relevant to this appeal, the decedent granted Eagle an option to purchase approximately 150 acres of real estate in Washington Township, Jefferson County. Although the contract indicated that the option must be exercised, inter alia, "as soon as necessary permits are obtained by [Eagle]

_____

[1] Judgment was entered on the order on December 7, 2017.

for a solid waste disposal facility," it did not make the transaction contingent upon Eagle's so utilizing the land. Option Agreement, 2/22/93, at 2. Also of importance to understanding the issues at hand, the land subject to the option contract was only a portion of the decedent's holdings, such that subdivision would be necessary to consummate the sale to Eagle.

Eagle gave notice of its intent to exercise the option shortly after the decedent's death for the purpose of building a waste disposal facility on the land. It was discovered that approximately one acre of the land was located in Sandy Township, Clearfield County, rather than in Washington Township, Jefferson County. Zoning and subdivision issues, along with the decedent's interim conveyance of a portion of the property to someone else, resulted in litigation in both counties.

In 1999, following resolution of the Jefferson County case in Eagle's favor, the orphans' court in the instant action ordered specific performance of Eagle's contract with the decedent pursuant to 20 Pa.C.S. § 3390.[2] The Estate

_____

[2] That statute provides, in relevant part:

> If any person makes a legally binding agreement to purchase or sell real or personal estate and dies before its consummation, his personal representative shall have power to consummate it, but if he does not do so, the court, on the application of any party in interest and after such notice and with such security, if any, as it may direct, in its discretion, may order specific performance of the agreement if it would have been enforced specifically had the decedent not died.

20 Pa.C.S. § 3390(a).

appealed, claiming that, because the one acre of the property located in Clearfield County did not meet the township's minimum lot size requirement, compliance with the specific performance order was illegal. In re Estate of Frano, 757 A.2d 1002 (Pa.Super. 2000) (unpublished memorandum at 10). This Court disagreed, holding that regardless of what the township decides upon application for subdivision approval, the co-executors of the Estate can comply with the court's order. Id. We explained:

> The option agreement provides in relevant part as follows:
>
>> If at the closing date the title to said tract of land is not good and marketable title in fee simple, or so insurable, then and in such event the Buyer shall have the option either (a) to take such title as Seller can give without abatement in price, or (b) to rescind this agreement and to be repaid all monies paid by Buyer to Seller.
>
> Thus, the co-executors here must seek subdivision approval, apply for a modification or variance if necessary, and otherwise comply with the provisions of the option agreement and the order of the trial court. If subdivision approval, or a modification or variance, is not granted, and the co-executors cannot convey good title to that portion of the property located in Clearfield County, then Eagle must decide whether to take title to property the co-executors are able to convey, or rescind the agreement.

Id. at 10-11 (cleaned up; emphasis added). Our Supreme Court declined discretionary review of this Court's decision. In re Estate of Frano ("Frano I"), 761 A.2d 550 (Pa. 2000).

Upon remand to the orphans' court following the appeal, Eagle deposited funds with the court while subdivision and zoning variance applications were

submitted. After the applications to subdivide the property to use the land for a waste storage facility were denied in both counties, Eagle chose to construct its facility elsewhere.

There was no additional docket activity in the instant case until 2013, when the orphans' court informed Eagle that its deposited funds would be forfeited to the Commonwealth absent prompt action. Eagle, desiring to acquire title to the property for a use other than a landfill, responded with a petition to compel conveyance of the property. The Estate, which had in the interim granted leases to third parties for the Marcellus Shale resources under the optioned land, inter alia, raised the defense of laches.

The orphans' court ruled that, as a matter of law, laches was not an available defense to the enforcement of a judgment. On appeal from that determination, this Court disagreed, but concluded that whether laches entitled the Estate to relief was not apparent from the record. In Re Estate of Frano ("Frano II"), 156 A.3d 344 (Pa.Super. 2016) (unpublished memorandum at 9), appeal denied, 169 A.3d 13 (Pa. 2017). This Court noted that Eagle sat on its rights by waiting so long to decide whether to rescind the contract or take the title that the Estate was able to convey after the subdivision and zoning variance applications were denied. Id. (unpublished memorandum at 10) (indicating that, at the time the applications were denied, "specific performance of the contract became illegal"). However, this Court also observed that the Estate had at times acted obdurately. Id. (unpublished

memorandum at 11). Therefore, this Court remanded "for the limited purpose of consideration of whether the Estate was prejudiced by Eagle's delay, and whether such prejudice is sufficient to tip the equities involved in the Estate's favor." Id.

On remand following the second appeal, the orphans' court found that the Estate did not suffer prejudice and granted Eagle's petition to compel. Accordingly, it ordered the Estate to cooperate with Eagle to submit a subdivision application for the Jefferson County portion of the property and, after its issuance, proffer a deed to Eagle for that land.[3] Opinion and Order, 10/10/17, at 8. The Estate filed a timely notice of appeal, and both the Estate and the orphans' court complied with Pa.R.A.P. 1925.

The Estate presents the following questions for our review.

I. Whether the lower court committed an error of law in granting Eagle's request for specific performance of the option contract on remand after the Superior Court had found as a conclusion of law that specific performance of the contract became illegal the moment the subdivision and zoning variance applications were denied?

II. Whether the lower court committed an error of law in failing to determine if the doctrine of laches operated to bar Eagle from now choosing its remedy under the option contract after subdivision approval was denied in 2001 by Washington Township?

Estate's brief at 8 (unnecessary capitalization omitted).

_____

[3] Eagle's petition requested that the conveyance be compelled "even if it does not include the one acre portion of the property located in Sandy Township" in Clearfield County. Petition to Compel, 10/21/13, at ¶ 14(c).

We begin our consideration by noting our standard of review:

> When reviewing a decree entered by the Orphans' Court, this Court must determine whether the record is free from legal error and the court's factual findings are supported by the evidence. Because the Orphans' Court sits as the fact-finder, it determines the credibility of the witnesses and, on review, we will not reverse its credibility determinations absent an abuse of that discretion.
>
> However, we are not constrained to give the same deference to any resulting legal conclusions. Where the rules of law on which the court relied are palpably wrong or clearly inapplicable, we will reverse the court's decree.

In re Estate of Walter, 191 A.3d 873, 878–79 (Pa.Super. 2018) (cleaned up).

The Estate first argues that, under the law of the case doctrine,[4] the orphans' court lacked the authority to enter its order granting specific performance of the contract. The Estate contends that this Court's 2016 decision in Frano II "conclusively resolved the legal question of whether specific performance could be granted by declaring, 'Specific performance of the contract became illegal the moment the subdivision and zoning variance applications were denied.'" Estate's brief at 34-35 (quoting Frano II, supra (unpublished memorandum at 10)). The Estate maintains that, given the rejections of the prior applications for subdivision were final adjudications,

_____

[4] The law of the case doctrine provides, inter alia, that "upon remand for further proceedings, a trial court may not alter the resolution of a legal question previously decided by the appellate court in the matter[.]" Pollock v. Nat'l Football League, 171 A.3d 773, 781 (Pa.Super. 2017) (quoting Zane v. Friends Hosp., 836 A.2d 25, 29 (Pa. 2003)).

- 6 -

Eagle was left only with "the choice to take whatever land the Estate could convey without subdivision approval or rescind the agreement." Id. at 38. Therefore, the Estate insists, "the lower court on remand was barred from directing the Estate to cooperate in submitting another subdivision application to Washington Township after the original subdivision request had been denied in October of 2001." Id. at 43.

Eagle suggests that the Estate's representation of the issues to be decided by the orphans' court following the Frano II remand is inaccurate. Eagle's brief at 35. Eagle argues that, viewing the above-quoted portion of Frano II in context, "it is clear that the Court was merely indicating that specific performance for the purpose noted in the subdivision application, i.e. use of the property as a landfill and rail transfer station, became illegal upon denial of the application." Id. at 37 (emphasis in original). Eagle contends that the fact that this Court remanded for the trial court to assess the equities of the laches defense "clearly supports the position that denial of the initial subdivision application did not irrevocably void or rescind Eagle's contractual rights." Id.

We agree with Eagle that this Court's Frano II decision did not preclude the orphans' court from entering its October 10, 2017 order. This Court did opine that the Estate's ability to legally convey the land to Eagle terminated once the applications based upon that proposed use were denied. However, rather than hold that the only remedy remaining for Eagle was to rescind the

contract, this Court indicated that, after the applications were denied, Eagle then had to choose "'whether to take [what] title to property the co-executors [were] able to convey, or [to] rescind the agreement.'" Frano II, supra (unpublished memorandum at 10 (quoting Frano I, supra (unpublished memorandum at 11)). If specific performance were no longer an available remedy for Eagle following the denial of its applications, there would have been no choice for Eagle to make; rather, this Court would have remanded solely for the orphans' court to determine whether laches barred Eagle's right to rescission. Instead, this Court, after noting that both rescission and specific performance (in the form of conveyance of the scope of title that the Estate was able to convey) remained available to Eagle following the rejection of its applications, remanded for the orphans' court to determine whether Eagle's delay in making its choice warranted preclusion of its right to any remedy. Accordingly, the decision of the orphans' court to grant Eagle's petition electing specific performance (conveyance of title generally as opposed to for operation of a waste storage facility) was not contrary to the law of the case. The orphans' court acted within its authority in ordering the Estate to cooperate with Eagle in submitting a new subdivision application, in Washington Township only, that, unlike the previously-rejected application, is not based upon the land's being used as a landfill. That is the title that the Estate is able to lawfully convey. As such, the Estate's first issue thus warrants no relief.

With its second question to this Court, the Estate claims that the orphans' court erred in failing to properly apply laches. In so contending, the Estate heavily relies upon the argument rejected above: that this Court's decision in Frano II precluded the orphans' court from ordering that the property be conveyed to Eagle. Estate's brief at 45-54, 65-66. The Estate also asserts that the orphans' court did not conduct an appropriate analysis of its laches defense, and that this Court should hold that laches bars the Estate from electing any remedy at this point. Id. at 65-66.

This Court has summarized the legal principles applicable to a laches defense as follows.

> The question of whether laches applies is a question of law; thus, we are not bound by the trial court's decision on the issue.
>
>> Laches bars relief when the complaining party is guilty of want of due diligence in failing to promptly institute the action to the prejudice of another. Thus, in order to prevail on an assertion of laches, respondents must establish: a) a delay arising from petitioner's failure to exercise due diligence; and, b) prejudice to the respondents resulting from the delay.
>
> The question of laches itself, however, is factual and is determined by examining the circumstances of each case. Laches arises when a party's position or rights are so prejudiced by length of time and inexcusable delay, plus attendant facts and circumstances, that it would be an injustice to permit presently the assertion of a claim against him.
>
>> Unlike the application of the statute of limitations, exercise of the doctrine of laches does not depend on a mechanical passage of time. Indeed, the doctrine of laches may bar a suit in equity where a comparable suit at law would not be barred by an analogous statute of limitations. Moreover,

> the party asserting laches as a defense must present evidence demonstrating prejudice from the lapse of time. Such evidence may include establishing that a witness has died or become unavailable, that substantiating records were lost or destroyed, or that the defendant has changed his position in anticipation that the opposing party has waived his claims.
>
> In the absence of prejudice to the one asserting laches, the doctrine will not be applied. In other words, prejudice to the defendant must be shown as a prerequisite to the application of laches.

*In re Estate of Moskowitz*, 115 A.3d 372, 380 (Pa.Super. 2015) (cleaned up).

As this Court noted in *Frano II*, "it is clear that Eagle slept on its right to choose a remedy," meeting the first prong of the test for application of laches. *Frano II*, supra (unpublished memorandum at 10). The questions for the orphans' court on remand were (1) the factual determination of whether the Estate suffered prejudice as a result of Eagle's delay, and, if so, (2) whether a balancing of the equities warranted application of laches to bar Eagle from obtaining relief.

The orphans' court offered the following discussion of its analysis.

> Material prejudice may be shown on the grounds of economic or evidentiary prejudice.
>
> > Evidentiary prejudice occurs when, by reason of the delay, a defendant is unable to present a full and fair defense on the merits due to the loss of records, the death of a witness, or the unreliability of memories. Economic prejudice occurs when a defendant suffers

- 10 -

the loss of monetary investments or incurs damages which would have been prevented if the patentee brought suit earlier. In determining if there is economic prejudice, the court must not merely consider those losses attributable to a finding of liability for infringement, but must look for a change in the defendant's economic position during the period of delay.

The Estate has not sufficiently argued, nor does the record reflect, that the Estate was unable to present a full and fair defense on the merits due to the loss of records, the death of a witness, or the unreliability of memories to the extent of suffering evidentiary prejudice. Several court proceedings have been held over the last 20 plus years, and the Estate has provided no testimony indicating that they were unable to produce evidence, documentary or testimonial, due to a delay in time. Thus, this Court cannot find that evidentiary prejudice exists due to the passage of time.

For economic prejudice to exist, it is not enough that a party changed their position, suffering a loss of monetary investment or incurring damages, a connection must be shown between the change in position and the passage of time. The Estate has changed its position in one significant way, as it now has taken out leases to develop the Marcellus Shale located on the property. However, the use of the property by the Estate to collect gas royalties could hardly be seen as a loss of a monetary investment, or that the Estate in some way has incurred damages due to this change. It is no secret that the land at issue has become more valuable over the years, and the Estate has capitalized on that value. However, option contracts are, by their nature, risky because they are meant to be held in limbo for a period of time while the party providing consideration for the option determines if they desire to purchase the property. . . .

. . . As the Estate has not met their burden of showing they have been prejudiced by Eagle's delay in exercising the option, and in fact have financially benefited from the use of the property, this Court can find no prejudice to the Estate.

Orphans' Court Opinion and Order, 10/10/17, at 5-7 (some citations and

emphasis omitted).

We discern no error of law or abuse of discretion in the trial court's decision. The orphans' court clearly complied with this Court's instruction to consider whether the Estate has suffered prejudice as a result of Eagle's delay that would make it unjust to allow Eagle to enforce its rights. Although the Estate makes bald assertions that it was prejudiced by the loss of witnesses and documents, see Estate's brief at 62-63, it offers no explanation of what information or evidence it is no longer able to offer as a result. As such, we have no basis to disturb the factual determination of the orphans' court that no prejudice was suffered by the Estate. The Estate hence cannot prevail in its laches defense. Moskowitz, supra at 380 (quoting Brodt v. Brown, 172 A.2d 152, 154 (Pa. 1961)) ("In the absence of prejudice to the one asserting laches, the doctrine will not be applied."). Accordingly, the Estate's second issue merits no relief from this Court.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 4/30/2019