J-A13040-18

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| ANDREW SCOTT HARVAN A/K/A SCOTT A. HARVAN AND MARIA A. HARVAN, A/K/A MARIE A. HARVAN, HIS WIFE, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellants | |
| v. | |
| MARK E. KRYSTYNIAK AND KATHRYN M. KRYSTYNIAK, HIS WIFE, DONALD K. SEDER AND FELECIA A. SEDER, HIS WIFE, AMERISERV FINANCIAL BANK AND MORTGAGE ELECTRONIC REGISTRATION SYSTEM, INC. (MERS) NOMINEE FOR AMERISERV FINANCIAL BANK, KEVIN DIX, AND VICKI L. SAMPEY-DIX, HIS WIFE, AND THE SCOTTDALE BANK & TRUST CO. | |
| v. | |
| TODD A. MCTAVISH AND LORIE M. MCTAVISH, HUSBAND AND WIFE, AND WASHINGTON FINANCIAL BANK | No. 1802 WDA 2017 |

Appeal from the Judgment Entered December 29, 2017
in the Court of Common Pleas of Westmoreland County,
Civil Division at No(s):  No. 8221 of 2005

BEFORE:  OLSON, J., DUBOW, J., and MUSMANNO, J.

MEMORANDUM BY MUSMANNO, J.:          **FILED AUGUST 31, 2018**

Andrew Scott Harvan a/k/a Scott A. Harvan and Maria A. Harvan a/k/a

Marie A. Harvan, his wife (collectively, "the Harvans"), appeal from the

Judgment entered on December 29, 2017, following the denial of their Motion

for Post-Trial Relief,[1] in a quiet title action against Mark E. Krystyniak and

Kathryn M. Krystyniak, his wife (collectively, "the Krystyniaks").[2]  We affirm.

The trial court previously set forth the relevant history concerning the

real property at issue in this appeal as follows:

> 1. The Duncan Plan was established in 1906.  The [Krystyniaks]
> and the [Harvans] own real property that is composed of lots that
> were created by the Duncan Plan.  The Duncan Plan lots were
> quite small, measuring 40 feet by 120 feet, and cannot be
> occupied or developed under the Municipalities Planning Code or
> the procedures of Mt. Pleasant Township or the regulations of
> Westmoreland County.
>
> 2. The Duncan Plan was re-subdivided twice:  the Pleasant Heights
> Plan was recorded in 1966[,] and the Ivy Heights Plan was

_____

[1] The Harvans' Notice of Appeal was filed from the Order denying their Motion
for Post-Trial Relief.  "It is well-settled law … that an appeal to this Court can
only lie from judgments entered subsequent to the trial court's disposition of
post-verdict motions, not from the order denying post-trial motions."  **U.S.
Bank, N.A. v. Pautenis**, 118 A.3d 386, 388 n.2 (Pa. Super. 2015).
Accordingly, this Court issued a Rule to Show Cause on December 20, 2017,
directing the Harvans to praecipe the trial court Prothonotary to enter
judgment, and to provide a certified copy of the trial court docket reflecting
the entry of judgment within 14 days.  The Harvans timely complied by
submitting a certified copy of the trial court docket indicating that Judgment
had been entered on December 29, 2017.  This Court thereafter entered an
Order discharging the Rule to Show Cause.  Because the trial court's entry of
Judgment on December 29, 2017 perfected the appeal, we conclude that the
instant appeal is properly before us, and we have amended the caption
accordingly.  **See** Pa.R.A.P. 905(a)(5) (providing that "[a] notice of appeal
filed after the announcement of a determination but before the entry of an
appealable order shall be treated as filed after such entry and on the day
thereof."); **see also Tincher v. Omega Flex, Inc.**, 180 A.3d 386, 396 n.7
(Pa. Super. 2018) (declining to quash appeal from order denying post-trial
motions where the appeal was perfected by the entry of judgment).

[2] Several additional defendants were identified in the underlying action, none
of whom are parties to the instant appeal.

record[ed] by the [Krystyniaks] in 2004. The 1966 and 2004 plans are essentially superimposed over the Duncan Plan.

3. Moore Avenue is a paper street that is an original part of the Duncan Plan, but which has never been accepted by Mt. Pleasant Township.

4. The lots in the Ivy [Heights] Plan are larger than those in the original Duncan Plan, and Moore Avenue passes over some of these lots.

5. When the plan for Ivy Heights was finalized, the Mt. Pleasant Township Planning Commission relocated a portion of Moore Avenue a very short distance from its original site and renamed it Rosewood Avenue. By approving the plan, the Township agreed to accept Rosewood Avenue as a public street. The actions of Mt. Pleasant Township were conducted pursuant to the Municipalities Planning Code.

6. The Ivy Heights Plan relocated the segment of Moore Avenue that extends from Stone Street[, a street which runs perpendicular to Moore Avenue,] to the Rosewood Avenue cul-de-sac. …

…

8. Nothing in the record indicates that the [Harvans] or any other party appealed the decision of the Planning Commission or otherwise challenged the relocation and renaming of Moore Avenue.

9. Rosewood Avenue runs parallel to the old Moore Avenue right-of-way, and it is situated only a matter of feet from Moore Avenue.

10. The [Krystyniaks] paved Rosewood Avenue and extended utilities along the roadway.

Trial Court Opinion, 3/31/09, at 4-6 (citation to record omitted).

On October 25, 2005, the Harvans filed a Complaint in quiet title.[3] The Harvans alleged that they were denied access over the Krystyniaks' tract of land as a result of the subdivision of the original Duncan Plan, and the elimination of Moore Avenue through the recording of the Ivy Heights Plan. The Harvans sought a determination by the trial court that they have an implied easement over Moore Avenue, as shown in the Duncan Plan, to access their property.

The Krystyniaks filed an Answer and New Matter on November 23, 2005, wherein they acknowledged that the Ivy Heights Plan eliminated Moore Avenue, but argued that the new plan supplies a new, paved public road, *i.e.*, Rosewood Avenue, through which the Harvans are able to access their property. The Krystyniaks also claimed that Moore Avenue, as provided for in the Duncan Plan, only allowed vehicular and pedestrian traffic, and did not provide an easement for utilities.

The Harvans filed a Preliminary Objection to the Krystyniaks' New Matter, and a Reply on December 13, 2005. On January 10, 2006, the Harvans filed an Amended Complaint, seeking essentially the same relief regarding Moore Avenue.

On September 1, 2006, with consent of the parties, the trial court entered an Order ("Consent Order"), which provided that (1) the Harvans were entitled to use, as a private right-of-way for ingress, egress and regress, the

---

[3] The Complaint also included a request for a declaratory judgment, and an action in ejectment, which are not relevant to the instant appeal.

streets and alleys identified in the Duncan Plan; (2) the Harvans could use the Duncan Plan's streets and alleys to install utilities and to implement storm water management; and (3) the Krystyniaks, their grantees, heirs and assigns (including individuals who had purchased or would purchase lots within the Ivy Heights Plan) were enjoined from inhibiting or restricting in any way the Harvans' right to access their property. The trial court also ordered that the action be discontinued, but the court retained jurisdiction to compel compliance with the terms of the Consent Order.

On July 28, 2008, the Krystyniaks filed a Petition to Modify the Consent Order, asserting that the Harvans had been intentionally abusing the scope of the Consent Order. The Krystyniaks argued that Rosewood Avenue provides a substantially similar means of vehicular access to the Harvans' property, and that the Harvans do, in fact, use Rosewood Avenue to access their property. The Krystyniaks claimed that the Harvans had nevertheless continued to use Moore Avenue, which is a dirt path, for the sole purpose of harassment and disruption, and that the Harvans' actions caused damage to the Krystyniaks' properties.

The Harvans filed an Answer, alleging that they had used Rosewood Avenue to access their property only when the Krystyniaks failed to abide by the terms of the Consent Order, *i.e.*, when Moore Avenue was blocked due to construction, or by the placement of dirt, trees and vehicles within Moore Avenue.

Following three days of evidentiary hearings, the Honorable William J. Ober ("Judge Ober") determined, *inter alia*, that (1) Rosewood Avenue is "in every respect superior to Moore Avenue" and provides greater utility to the Harvans than Moore Avenue; (2) because the Moore Avenue right-of-way passes over the front yards of residential lots in the Ivy Heights Plan, vehicular traffic over Moore Avenue poses a hazard to the health, safety and property of the Ivy Heights Plan's residents; and (3) the Krystyniaks had agreed to allow the Harvans to extend utility lines from the Rosewood Avenue cul-de-sac to the Harvans' property. **See** Trial Court Opinion, 3/31/09, at 6. The trial court additionally determined that "the process of repeatedly re-subdividing the 1906 Duncan Plan ha[d] either *de jure* or *de facto* relocated a portion of Moore Avenue to be the present Rosewood Avenue." **Id.** at 4. The trial court, exercising its equitable powers, entered an Order on March 31, 2009 (the "Modification Order"), vacating the Moore Avenue right-of-way and relocating it to Rosewood Avenue, allowing the Harvans to extend utility lines from the Rosewood Avenue cul-de-sac to their property, and providing for reimbursement for the proportionate costs of such extension of utilities. **Id.** at 9.

The Harvans subsequently filed a Motion for Post-Trial Relief, requesting that the trial court reinstate the Consent Order, and asking for clarification regarding the provision providing for reimbursement of the extension of utilities. On April 21, 2009, the trial court entered an Order denying the Harvans' Motion to reinstate the Consent Order, and granting their Motion for

clarification. The trial court amended the portion of the Modification Order providing for reimbursement as follows:

> The court finds, and therefore orders, that the implementation of [the] Krystyniaks' consent to permit the extension of utilities from their present Northerly terminus in Rosewood Avenue to the Sourtherly property line of [the] Harvans' (approximately 420 feet) be accomplished by [the] Krystyniaks conveying an appropriate utilities easement. It is further ordered that [the] Krystyniaks pay or reimburse to the Harvans the proportionate amount of costs per foot of such extension over the Krystyniaks' property at such time as the Harvans elect to and otherwise gain necessary approvals to extend such utilities to and for use upon their property.

Order, 4/21/09, at 1-2 (unnumbered). This Court subsequently affirmed the Modification Order, and the Pennsylvania Supreme Court denied allowance of appeal. *See Harvan v. Krystyniak*, 4 A.3d 668 (Pa. Super. 2010) (unpublished memorandum), *appeal denied*, 608 Pa. 668 (Pa. 2011).

In May 2012, the Harvans filed a Motion for Rule to Show Cause why the Modification Order and the April 21, 2009 Order should not be enforced, alleging that they had initiated a plan to install utilities in September 2011, but that the Krysyniaks had failed to cooperate, and had refused to execute rights-of-way agreements with utility companies. The Harvans additionally requested counsel fees. The trial court thereafter issued a Rule to Show Cause, and directed the Krystyniaks to file a response within 30 days. The Krystyniaks filed a Response, offering to extend utilities only for a single-family residence. The Honorable Anthony G. Marsili ("Judge Marsili") conducted several evidentiary hearings on the matter. By Order dated

January 22, 2014, the trial court directed that the Harvans be permitted to connect a sewer pipeline at the Rosewood Avenue cul-de-sac to service up to eight residences, and that each party would be responsible for their own counsel fees and costs. The trial court additionally stated that it would require additional expert testimony concerning the cost of extending the utilities.

On November 18, 2016, the Harvans filed an Omnibus Motion to Conclude Action, requesting (1) a hearing for the consideration of expert testimony regarding the costs of the extension of utilities; and (2) a hearing to reconsider the court's denial of counsel fees and costs. By Order dated December 30, 2016, the trial court denied the Harvans' request for a hearing to reconsider the imposition of counsel fees, and scheduled a hearing for the presentation of expert testimony regarding the costs of extension of utilities.

The trial court conducted a hearing on May 18, 2017, during which the Harvans and the Krystyniaks each presented expert testimony as to the costs of the utilities extension. The Harvans' expert witness, Garrett Salandro ("Salandro") of G. Salandro Landscaping, LLC, testified that his company could complete the project for $37,120, and that the Municipal Authority of Westmoreland County ("Municipal Authority") would supply the necessary pipes for $13,750. The Krystyniaks' expert witness, Michael Koehler ("Koehler"), testified that his bid of $22,000 would include placing the electric and water lines. Koehler also testified that laying the sewer line would cost an additional $5,000, and landscaping would cost an additional $3,000.

Koehler testified that he was not aware that he would have to install a sewer line, so the cost of the pipe was not included in his estimate.

Following the hearing, the trial court directed both parties to submit proposed findings of fact and conclusions of law. The Harvans and the Krystyniaks timely complied. The trial court issued an Opinion and Order on July 26, 2017, wherein the trial court determined that Salandro's bid did not include the $13,750 necessary to purchase pipe from the Municipal Authority, and therefore, Salandro's total estimate is $50,870 for the completion of all required utility work and restoration of the roadway. The trial court also determined that Koehler's total estimate would increase to $43,750, after adding the estimated costs of purchasing pipe from the Municipal Authority, laying the sewage line, and landscaping (excluding restoration of the roadway). Based upon its determinations, the trial court ordered the Krystyniaks to pay $43,750 into a mutually selected escrow/trust account so the Harvans could choose any contractor to complete the project. The trial court additionally stated that the Harvans would be responsible for any additional costs necessary to complete the work.

On August 7, 2017, the Harvans filed a Motion for Post-Trial Relief, alleging that the trial court erred in concluding that $43,750 would satisfy the April 21, 2009 Order, and asserting that Koehler's bid was incomplete because it did not include restoration of the roadway. The Harvans also claimed that the trial court erred in failing to provide for contingencies or extra costs, and pointed out that the April 21, 2009 Order requires the Krystyniaks to

reimburse the Harvans for the installation costs. Additionally, the Harvans argued that the trial court erred in failing to consider their request for counsel fees. The trial court denied the Harvans' Motion by Order dated November 1, 2017.[4] The instant appeal followed.

On appeal, the Harvans raise the following questions for our review:

1. Did the [trial c]ourt err in failing to apply the coordinate jurisdiction rule by failing to comply with Judge Ober's Order of April 21, 2009, by requiring the Krystyniaks to pay into escrow the sum of $43,750.00, rather than the $50,870.00 testified to by [the Harvans'] expert witness?

2. Did the [trial] court err in failing to conduct a hearing regarding whether or not to award counsel fees pursuant to 42 Pa.C.S.[A. §] 2503(7) in light of [the] Krystyniak[s'] dilatory, obdurate, or vexatious conduct which required [the Harvans'] incurred legal fees to implement Judge Ober's Order of April 21, 2009?

Brief for Appellants at 4.

In the Modification Order, the trial court exercised its equitable powers to relocate the Moore Avenue right-of-way. Because we are now asked to consider the trial court's decision regarding the manner in which the Modification Order, and its amendment in the April 21, 2009 Order, should be implemented, we will apply the equity standard of review. *See Armstrong Sch. Dist. v. Armstrong Educ. Ass'n*, 595 A.2d 1139, 1143 (Pa. 1991) (stating that "[w]here equity assumes jurisdiction for one or more purposes, it will retain jurisdiction for *all purposes* to give complete relief and to do complete justice between the parties. This may include an award of equitable

---

[4] The Order was docketed on November 2, 2017.

relief not covered by the original prayer." (citation omitted; emphasis in original)).

"In an appeal from a trial court sitting in equity, the standard of review is rigorous." *Lilly v. Markvan*, 763 A.2d 370, 372 (Pa. 2000). Our review "is limited to determining whether the trial court committed an error of law or an abuse of discretion. The scope of review of a final decree in equity is limited[,] and will not be disturbed unless it is unsupported by the evidence or demonstrably capricious." *Coldren v. Peterman*, 763 A.2d 905, 907-08 (Pa. Super. 2000).[5]

In their first claim, the Harvans argue that the trial court erred in failing to apply the coordinate jurisdiction rule, and awarding the Harvans only 86% of the total cost of extending utilities to their property. Brief for Appellants at 15. The Harvans assert that Judge Ober's April 21, 2009 Order required the Krystyniaks to reimburse the Harvans for the total cost of the extension of utilities, and therefore, the Harvans were entitled to have $50,870 placed into escrow. *Id.* at 18-19. The Harvans claim that the trial court properly determined that Salandro's bid was complete, but nevertheless improperly ordered the Krystyniaks to pay $43,750 into escrow to satisfy Koehler's bid,

---

[5] We note that the underlying action in this case is an action in quiet title, and our standard of review in such cases similarly limits us to considering whether a trial court's factual findings are supported by competent evidence, and whether the trial court committed an error of law. *See Birdsboro Mun. Auth. v. Reading Co. and Wilmington & N. R.R.*, 758 A.2d 222, 225 (Pa. Super. 2000).

which was approximately $7,000 lower and did not provide for the restoration of the roadway. *Id.* at 16-17.

Our Supreme Court has set forth the following explanation of the coordinate jurisdiction rule:

> One of the distinct rules that are encompassed within the "law of the case" doctrine is the coordinate jurisdiction rule. Generally, the coordinate jurisdiction rule commands that upon transfer of a matter between trial judges of coordinate jurisdiction, a transferee trial judge may not alter resolution of a legal question previously decided by a transferor trial judge. More simply stated, judges of coordinate jurisdiction should not overrule each other's decisions. The reason for this respect for an equal tribunal's decision … is that the coordinate jurisdiction rule is based on a policy of fostering the finality of pre-trial applications in an effort to maintain judicial economy and efficiency. Furthermore, consistent with the law of the case doctrine, the coordinate jurisdiction rule serves to protect the expectations of the parties, to insure uniformity of decisions, to maintain consistency in proceedings, to effectuate the administration of justice, and to bring finality to the litigation.

*Zane v. Friends Hosp.*, 836 A.2d 25, 29 (Pa. 2003) (internal citations, footnote and paragraph break omitted).

Here, Judge Ober's April 21, 2009 Order (which, in relevant part, amended the prior Modification Order) required that the "Krystyniaks pay or reimburse to the Harvans the **proportionate amount of costs per foot** of such extension [of utilities] over the Krystyniaks' property…." Order, 4/21/09, at 2 (unnumbered; emphasis added). However, the Order does not specifically designate, to either party, the costs of restoring the affected property to its original condition. Following an evidentiary hearing limited to the cost of the extension of utilities, Judge Marsili considered the evidence of

- 12 -

each party's expert witness, acknowledged the approximately $7,120 difference between the two bids, and concluded that the Krystyniaks were responsible for the payment of $43,750 to complete the project. Further, the trial court noted the following considerations for its decision:

> 1. [The Harvans'] expert did not itemize the cost of the individual phases of his work estimate, including the specific itemization of restoring the roadway;
>
> 2. Both [the Harvans'] estimate and the [Krystyniaks'] estimate contained a "rock clause",[6] but neither provided any potential estimate and further, the [Harvans'] expert implied … that such a contingency should not be necessary;
>
> 3. The Order of April 21, 2009 … does not specifically address the issue of any costs above and beyond that the [Krystyniaks] pay or reimburse the [Harvans] the proportional amount of costs per foot of such extension over the [Krystyniaks'] property.

Opinion and Order, 7/26/17, at 4 (footnote added). The trial court additionally acknowledged that "this case has been extremely argumentative and contentious during the course of litigation and [] the litigation itself has extended over a twelve[-]year period." *Id.*

Significantly, the trial court did not overrule Judge Ober's April 21, 2009 Order. Instead, Judge Marsili interpreted the manner in which the dictates of the Modification Order and the April 21, 2009 Order should be implemented. *See* Decision and Order, 1/22/14, at 3 (stating that the trial court, *i.e.*, Judge

---

[6] A "rock clause" provides for additional charges if a contractor encounters rock during excavation. *See* N.T., 5/18/17, at 36 (wherein Salandro testified that an additional machine would be necessary to dig through solid rock); *see also id.* at 25, Plaintiff's Exhibit 5 (Salandro's Bid Proposal); 53, Defendant's Exhibit A (Koehler's Bid).

Marsili, "is faced with determining the practical implications of interpreting the legal terms and conditions of said March 3[1], 2009 and April 21, 2009 Orders….").  Because the trial court's determination is supported by the evidence of record, and we discern no abuse of discretion or error of law, the Harvans are not entitled to relief on their first claim.

In their second claim, the Harvans contend that the trial court erred by refusing to conduct a hearing regarding the imposition of counsel fees pursuant to 42 Pa.C.S.A. § 2503(7).[7]  Brief for Appellants at 19.  Essentially, the Harvans argue that the Krystyniaks are responsible for prolonging the period of litigation in this case.  *See id.* at 20-26.  The Harvans claim that the Krystyniaks' conduct required the litigation of several issues (and therefore, the payment of additional counsel fees), which could have been avoided if the Krystyniaks had allowed them to access their property over Moore Avenue. *Id.* at 20, 25.  The Harvans also assert that "[t]he equity of Judge Ober's Orders has been lost by the contemptuous and obdurate conduct of the Krystyniaks." *Id.* at 26.

Here, the Harvans failed to cite to any **relevant** case law in support of

---

[7] Section 2503(7) provides for the imposition of counsel fees as a sanction against "dilatory, obdurate or vexatious conduct during the pendency of a matter."  42 Pa.C.S.A. § 2503(7).

their second claim.[8]  **See** Pa.R.A.P. 2119(a) (stating that the argument shall include "such discussion and citation of authorities as are deemed pertinent."). Accordingly, the Harvans' second issue is waived.  **See Lackner v. Glosser**, 892 A.2d 21, 29 (Pa. Super. 2006) (stating that "arguments which are not appropriately developed are waived.  Arguments not appropriately developed include those where the party has failed to cite any authority in support of a contention." (internal citation omitted)); **see also In re Estate of Whitley**, 50 A.3d 203, 209 (Pa. Super. 2012) (stating that "[t]his Court will not consider the merits of an argument which fails to cite relevant case or statutory authority.  Failure to cite relevant legal authority constitutes waiver of the

_____

[8] The Harvans only included citations to case law relating to their assertions that the trial court's actions in vacating the Consent Order, and relocating the defined right of way, were "contrary to well-established legal principles[.]" Brief for Appellants at 22.  No such argument is identified in the Harvans' Statement of Questions Involved.  **See** Pa.R.A.P. 2116(a) (providing that "[n]o question will be considered unless it is stated in the statement of questions involved or is fairly suggested thereby.").  Moreover, this Court previously considered the propriety of the Modification Order in the Harvans' first appeal.  **See Harvan v. Krystyniak**, 4 A.3d 668 (Pa. Super. 2010) (unpublished memorandum).

claim on appeal." (internal citation omitted)).[9]

Based upon the foregoing, we affirm the Judgment of the trial court.

Judgment affirmed.
Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 8/31/2018

_____

[9] Even if the Harvans had properly developed this argument, we would conclude that it is without merit. "The denial of a request for attorney's fees is a matter within the sound discretion of the trial court[.]" **Hart v. O'Malley**, 781 A.2d 1211, 1216 (Pa. Super. 2001). Additionally, this Court has upheld a trial court's denial of counsel fees without an evidentiary hearing. **See, e.g., ACE Am. Ins. Co. v. Underwriters at Lloyds and Cos.**, 939 A.2d 935, 946 (Pa. Super. 2007) (stating that "the trial court was well within its discretionary authority to deny [the participant's] motion for sanctions and in doing so without convening an evidentiary hearing."). In denying the Harvans' request for counsel fees, the trial court stated that the practical implications of the Modification Order and the April 21, 2009 Order were not clear and straightforward, and that the Krystyniaks had attempted to provide counterproposals to the Harvans' requests. The trial court also noted that "through these many years of litigation, each party has become fixed upon, and convinced that his own position is correct." Decision and Order, 1/22/14, at 6. In light of the fact that both parties have been "extremely argumentative and contentious during the course of the litigation," Order, 11/1/17, at 2, we would not disturb the trial court's denial of the Harvans' request for counsel fees.