Anthony Miller,        :
      Appellant   :
             :
    v.        : No.  274 C.D. 2022
             : Argued:  March 6, 2023
Craig Coulter, Badge # 9208   :


BEFORE:  HONORABLE MICHAEL H. WOJCIK, Judge
      HONORABLE STACY WALLACE, Judge
      HONORABLE BONNIE BRIGANCE LEADBETTER, Senior Judge


OPINION NOT REPORTED

MEMORANDUM OPINION
BY JUDGE WALLACE        FILED:  April 18, 2023


Anthony Miller (Miller) appeals from the Court of Common Pleas of Philadelphia County's (trial court) order denying his petition for relief from a judgment of non pros,[1] which the trial court entered following his failure to appear at an arbitration hearing.  On appeal, Miller argues[2] the trial court abused its discretion in denying his petition because he had two legitimate excuses for not attending the arbitration hearing: (1) the trial court previously entered an order removing his case from compulsory arbitration and (2) the arbitration program did not have jurisdiction to hear his case.  Miller also argues the trial court's judgment

---

[1]  Non pros is an abbreviation for *non prosequitur*, which Black's Law Dictionary indicates is Latin for "he does not prosecute," and defines as a "judgment rendered against a plaintiff who has not pursued the case."  Black's Law Dictionary 1269 (11th ed. 2019).

[2]  We have reframed and reorganized Miller's issues on appeal for clarity and ease of analysis.

of non pros violated his constitutional and statutory rights to a jury trial. Upon review, we affirm.

## I.    Background

On October 27, 2019, Miller filed a civil complaint in the trial court against Craig Coulter (Coulter). Reproduced Record (R.R.) at 6. In his complaint, Miller alleged Coulter, acting in his official capacity as a detective for the Philadelphia Police Department, detained Miller in the process of executing an arrest warrant for another individual who was in Miller's rental car at the time. *Id.* at 10. Thereafter, Miller alleges Coulter falsely arrested, assaulted, and battered him, in addition to depriving Miller of a legally purchased firearm and his rental car.[3] *Id.* at 10-14.

---

[3] The relevant factual allegations from Miller's complaint are as follows:

5. At around 2:30 PM on March 23, 2018, Plaintiff and his cousin, . . . were sitting inside of Plaintiff's rental car, parked in front of [Plaintiff's cousin's] house [in Philadelphia].

6. [Plaintiff's cousin] had an active arrest warrant for carjacking.

7. As Plaintiff and [his cousin] were sitting in the rental car, [Philadelphia Police Department (PPD)] officers arrived at the scene, seeking to execute the arrest warrant for [Plaintiff's cousin].

8. Upon noticing [Plaintiff's cousin] sitting in Plaintiff's passenger seat, PPD officers, including and at the direction of Defendant Coulter, took [Plaintiff's cousin] into custody under the authority of the arrest warrant.

9. At the direction of Defendant Coulter, PPD officers detained and searched Plaintiff and his vehicle based solely upon his close proximity to [his cousin].

10. Upon searching Plaintiff's person and vehicle, officers discovered Plaintiff's firearm that was stored in the vehicle. Plaintiff had a valid license to carry the firearm issued by PPD.

11. Defendant Coulter seized Plaintiff's rental vehicle and his legally possessed firearm.

12. Although Plaintiff did not commit any crime, and there was no evidence that he was ever involved in any criminal activity, Defendant Coulter had Plaintiff arrested and thoroughly searched for allegedly participating in the robbery that provided the basis for [his cousin]'s arrest warrant.

13. Plaintiff was then taken to PPD's 35th District stationhouse where Defendant Coulter interrogated him and lectured him about "hanging out" with [his cousin].

**(Footnote continued on next page…)**

2

Miller did not allege that he suffered any physical injuries during this incident. *See id.* at 8-10. Nevertheless, he sought damages "in an amount in excess of Fifty Thousand Dollars ($50,000) plus interest and the cost of suit, and such other further relief as is just and proper." *Id.* at 12-14.

On February 6, 2020, after the conclusion of an initial case management conference, trial court Judge Daniel Anders (Judge Anders) issued a Case Management Order, which set forth various procedural deadlines and a date by which he expected the case to be ready for trial. R.R. at 16-17. By order entered February 28, 2020, however, Judge Anders, "having determined that the amount in controversy is below the mandatory arbitrations limits," referred the case to arbitration pursuant to Pennsylvania Rule of Civil Procedure 1021(d).[4] *Id.* at 18.

On March 2, 2020, Miller filed a motion requesting the case be removed from compulsory arbitration and placed back on the jury trial list. R.R. at 3, 17-19. In his motion, Miller alleged that "[t]he sole basis" for Judge Anders' decision to refer the case to arbitration was Coulter's "preference for the more defense friendly arbitration forum," and that the trial court considered "no evidence, no law, no

---

14. Defendant Coulter did not release Plaintiff from the 35th District until more than eight hours from the time that he was initially detained.

15. However, Defendant Coulter never returned Plaintiff's firearm. Additionally, Defendant kept Plaintiff's rental car for approximately two months which resulted in Plaintiff incurring $3,000 in fees owed to the rental car agency.

16. As a result of Plaintiff's arrest, PPD revoked his license to carry a firearm on May 25, 2018.

17. As a result of Defendant Coulter's actions, Plaintiff has suffered severe emotional distress, [been] deprived of his personal property, and suffered monetary loss.

R.R. at 10-12.

[4] "The court on its own motion or motion of any party may by discovery, pre-trial conference, hearing or otherwise, determine the amount actually in controversy and enter an order of reference to arbitration." Pa.R.Civ.P. 1021(d).

argument, [and] no briefing . . . ." *Id.* at 22. As a result, Miller alleged Judge Anders' decision violated his constitutional and statutory right to a jury trial. *Id.* The trial court assigned Miller's motion to Judge Paula Patrick. *Id.* at 3.

An order signed by Judge Anders, which scheduled an arbitration hearing in this matter, was docketed at 12:13 p.m. on June 8, 2020. R.R. at 3. An order signed by Judge Patrick, which was dated June 4, 2020, was subsequently docketed at 3:31 p.m. on June 8, 2020. *Id.* Judge Patrick's order granted Miller's motion to remove his case from mandatory arbitration and reinstated the previous scheduling order. *Id.* Nevertheless, by order entered November 4, 2021, Judge Anders rescheduled an arbitration hearing in this matter for January 20, 2022. *Id.*; Trial Ct. Op., 5/26/22, at 2.

Despite receiving notice, Miller did not appear at the arbitration hearing. Pursuant to Pennsylvania Rule of Civil Procedure 1303(b)(2) and Philadelphia County Local Rule 1303(a), the board of arbitrators transferred the case "to the major non-jury program with the consent of all parties present to be heard before a judge of the [trial court] . . . ." *See* Pa.R.Civ.P. 1303(b)(2); Phila.Civ.R. *1303(a); Trial Ct. Op., 5/26/22, at 2. The trial court then entered a judgment of non pros against Miller for his failure to appear at the scheduled arbitration hearing. *Id.*

On January 25, 2022, Miller filed a petition for relief from the trial court's judgment of non pros pursuant to Pennsylvania Rule of Civil Procedure 3051, Pa.R.Civ.P. 3051. R.R. at 4-5, 31. In addition to the arguments Miller asserted in his motion to have the case removed from arbitration, Miller alleged Judge Anders "intentionally misplaced" the case "into compulsory arbitration as a result of personal bias and animosity towards black litigants." *Id.* at 33. Miller also noted that Judge Patrick had already removed the case from arbitration, yet Judge Anders

4

ignored that order. R.R. at 33. On March 21, 2022, trial court Judge Abbe Fletman denied Miller's petition for relief from judgment of non pros. *Id.* at 5. Miller timely appealed to this Court.

## II. Analysis

In reviewing a trial court's decision to deny a petition to open or strike a judgment of non pros, this Court's review is limited to determining whether the trial court abused its discretion. *Womer v. Hilliker*, 908 A.2d 269, 279 (Pa. 2006) (citation omitted). "An abuse of discretion is not merely an error of judgment. . . . Rather, discretion is abused only 'if in reaching a conclusion, the law is overridden or misapplied, or the judgment exercised is manifestly unreasonable or the result of partiality, prejudice, bias, or ill will, as shown by the evidence of record.'" *Neshaminy Constructors, Inc. v. Plymouth Twp.*, 572 A.2d 814, 817 n.1 (Pa. Cmwlth. 1990) (citation omitted). Thus, we will only overturn a trial court's decision to deny a petition to open or strike a judgment of non pros if it "reflects manifest unreasonableness, or partiality, prejudice, bias, or ill-will, or such lack of support as to be clearly erroneous." *Womer*, 908 A.2d at 279.

When a board of arbitrators "is convened for hearing, if one or more parties is not ready the case shall proceed and the arbitrators shall make an award unless the court (1) orders a continuance, or (2) hears the matter if the notice of hearing contains the statement required by subdivision (a)(2) and all parties present consent." Pa.R.Civ.P. 1303(b). Philadelphia County Local Rules also provide that "if one or more parties is not present at the [arbitration] hearing, the matter may be heard at the same time and date before a judge of the court without the absent party or parties." Phila.Civ.R. *1303. When that occurs, the trial court may "take action not available

5

to the arbitrators, including the entry of a nonsuit if the plaintiff is not ready or a non pros if neither party is ready." Pa.R.Civ.P. 1303(b) cmt.

Once a trial court enters a judgment of non pros, a plaintiff may petition the trial court for relief from the judgment of non pros pursuant to Pennsylvania Rule of Civil Procedure 3051. "A request to open a judgment of non pros, like the opening of a default judgment, is in the nature of an appeal to the equitable powers of the court." *Madrid v. Alpine Mountain Corp.*, 24 A.3d 380, 382 (Pa. Super. 2011) (citation omitted). Rule 3051 establishes the requirements for obtaining relief from a judgment of non pros as follows:

> (a) Relief from a judgment of non pros shall be sought by petition. All grounds for relief, whether to strike off the judgment or to open it, must be asserted in a single petition.
>
> (b) Except as provided in subdivision (c), if the relief sought includes the opening of the judgment, the petition shall allege facts showing that
>
>> (1) the petition is timely filed,
>>
>> (2) there is a reasonable explanation or legitimate excuse for the conduct that gave rise to the entry of judgment of non pros, and
>>
>> (3) there is a meritorious cause of action.

Pa.R.Civ.P. 3051. "Any appeal related to a judgment of non pros lies not from the judgment itself, but from the denial of a petition to open or strike." *Madrid*, 24 A.3d at 382.

The trial court denied Miller's petition for relief from a judgment of non pros because it determined he did not provide a reasonable explanation or legitimate excuse for failing to appear at his arbitration hearing. Trial Ct. Op., 5/26/22, at 7-8. The trial court noted in its written opinion that Miller's lawyer sent an email to Coulter's lawyer wherein he

6

referred to arbitration as a 'cat scratch pile' and stated that he 'would kill [himself] before [he] did arbitration.' (Answer to Petition, Exhibit A, Dkt. At 2/4/22 ¶¶ 2, 14). In that correspondence, [Miller's lawyer] also wrote, 'We will get our trial date after we intentionally fail to show up for that stupid ass arbitration 'scheme' next month. That is why I am not filing any more motions about it. Only an idiot would put these cases in arbitration.' (*Id.* at ¶ 16). [Miller's lawyer] further asserted, 'Plaintiffs do not have to show up to arbitration because the arbitration court has no jurisdiction over their cases that seek more than $50K. So, no matter what, we would not show up to arbitration.' (*Id.* at ¶ 5).

Trial Ct. Op., 5/26/22, at 3. Miller's lawyer did not deny making any of these comments in this appeal, rather he defended making them, as follows:

Second, it is true that the undersigned said, in an email to Detective Coulter's counsel, "We will get our trial date after we intentionally fail to show up for that stupid ass arbitration 'scheme' next month." Counsel is well within his rights to express righteous indignation[5] in the face of manifest injustice, and he should not be punished for his protected speech. U.S. Const. amend. I. Coulter's argument should be rejected to the extent that it implies that Mr. Miller's rights should be denied because he has a negative view of the arbitration program's appropriateness for this case. Rosenberger v. Rector, 515 U.S. 819, 829-830 (1995)(observing that viewpoint discrimination violates the First Amendment).

Appellant's Reply Br. at 6-7.

We begin by analyzing Miller's argument that he was excused from attending his scheduled arbitration hearing because the trial court previously entered an order removing this case from arbitration and placing it back on the trial list. *See* Appellant's Br. at 16-17. Miller notes that Judge Patrick entered an order which

---

[5] As our Superior Court aptly set forth in *Hall v. Reeb*, 555 A.2d 926, 928 (Pa. Super. 1989), "[w]e do not, under any circumstances countenance the temerity of any member of the bar who instructs or encourages a party to intentionally fail to appear at a scheduled arbitration hearing . . . ." Rather, we exhort all members of the bar to thoroughly research their positions, as knowledge and understanding can remove the blinders that far too often accompany righteous indignation.

7

removed this case from compulsory arbitration and placed it back on the trial list. *Id.* Miller also notes that Judge Patrick's order was never vacated or overruled by Judge Anders. *Id.* at 17.

Judge Anders defends his order scheduling arbitration by citing the coordinate jurisdiction rule and arguing that Judge Patrick acted improperly in overruling his earlier decision to transfer this case from the trial list to the compulsory arbitration program. Trial Ct. Op., 5/26/22, at 5. Miller responds by arguing that he meets an exception to the coordinate jurisdiction rule. *See* Appellant's Br. at 19.

The Pennsylvania Supreme Court has explained the coordinate jurisdiction rule as follows:

> One of the distinct rules that are encompassed within the "law of the case" doctrine is the coordinate jurisdiction rule. Generally, the coordinate jurisdiction rule commands that upon transfer of a matter between trial judges of coordinate jurisdiction, a transferee trial judge may not alter resolution of a legal question previously decided by a transferor trial judge. *Commonwealth v. Starr*, . . . 664 A.2d 1326, 1331 ([Pa.] 1995); *see also Riccio v. American Republic [Ins.] Co.*, . . . 705 A.2d 422, 425 ([Pa.] 1997). More simply stated, judges of coordinate jurisdiction should not overrule each other's decisions. *Id.*; *Okkerse v. Howe*, . . . 556 A.2d 827, 831 ([Pa.]1989).
>
> The reason for this respect for an equal tribunal's decision, as explained by our court, is that the coordinate jurisdiction rule is "based on a policy of fostering the finality of pre-trial applications in an effort to maintain judicial economy and efficiency." *Starr*, 664 A.2d at 1331. Furthermore, consistent with the law of the case doctrine, the coordinate jurisdiction rule serves to protect the expectations of the parties, to insure uniformity of decisions, to maintain consistency in proceedings, to effectuate the administration of justice, and to bring finality to the litigation. *Id.*
>
> This general prohibition against revisiting the prior holding of a judge of coordinate jurisdiction, however, is not absolute. Departure from the rule is allowed in "exceptional circumstances" when there has been a change in the controlling law or where there was a substantial change

8

in the facts or evidence. *Id.* at 1332. Of import for this appeal, an exception is permitted where "the prior holding was clearly erroneous and would create a manifest injustice if followed." *Id.* The purpose for this limited exception is largely self-evident. To accede to a coordinate judge's order that is clearly erroneous would be not only to permit an inequity to work on the party subject to the order, but would allow an action to proceed in the face of almost certain reversal on appellate review. Moreover, **the requirement that the prior holding also create a manifest injustice serves as a significant curb on the exception so that it would apply to only those situations in which adhering to the prior holding would be, in essence, plainly intolerable.**

In sum, while a judge must in most circumstances defer to the prior decision of another judge of coordinate jurisdiction, he or she is not required to do so in the limited and exceptional situation in which, inter alia, the prior judge's order is clearly erroneous and would result in a manifest injustice.

*Zane v. Friends Hosp.*, 836 A.2d 25, 29–30 (Pa. 2003) (emphasis added).

In determining whether the coordinate jurisdiction rule applies, we must evaluate the procedural context of the litigant's motion and the trial court's conflicting rulings. *See Riccio*, 705 A.2d at 425. As the Supreme Court has explained:

Where the motions differ in kind, as preliminary objections differ from motions for judgment on the pleadings, which differ from motions for summary judgment, a judge ruling on a later motion is not precluded from granting relief although another judge has denied an earlier motion. However, a later motion should not be entertained or granted when a motion *of the same kind* has previously been denied, unless intervening changes in the facts or the law clearly warrant a new look at the question.

*Goldey v. Trustees of the Univ. of Pa.*, 675 A.2d 264, 267 (Pa. 1996).

With these general rules regarding orders of judges of coordinate jurisdictions in mind, as well as their exceptions, we turn to whether Judge Patrick's order

9

violated the coordinate jurisdiction rule. Judge Anders determined that the actual amount in controversy was less than the compulsory arbitration program's limit of $50,000 and referred the case to arbitration. Miller immediately filed a motion requesting the case be removed from arbitration and returned to the trial list. Judge Patrick, without any intervening changes in the facts or the law, placed the case back on the trial list. The issue determined by Judge Anders was of the same kind as the issue subsequently determined by Judge Patrick. Thus, the coordinate jurisdiction rule would apply and render Judge Patrick's order invalid unless Judge Anders' determination "was clearly erroneous and would create a manifest injustice if followed." *Zane*, 836 A.2d 29.

In reviewing Judge Anders' order, we first note that Judge Patrick did not make a specific finding that Judge Anders' determination was clearly erroneous, or that it created a manifest injustice. *See* R.R. at 3. Instead, she simply granted Miller's motion to remove the case from compulsory arbitration and placed it back on the trial list. *Id.*

In his complaint, Miller essentially alleged that Coulter illegally detained him for approximately eight hours, illegally searched his vehicle and his person, illegally seized and retained his firearm and rental vehicle, illegally interrogated him, and illegally revoked his license to carry a firearm. R.R. at 10-12. Miller claimed he suffered financial losses in the amount of $3,000 in the form of fees owed to his car rental company. *Id.* at 11. Miller did not allege he suffered any physical injuries during the incident. *Id.* at 10-12. Based upon these facts, we cannot say that Judge Anders' determination that the amount actually in controversy was less than $50,000 was "clearly erroneous" or "plainly intolerable." *Zane*, 836 A.2d at 29-30. Accordingly, Judge Anders' determination does not justify an exception to the

10

coordinate jurisdiction rule. *See id.* at 29-30. Therefore, we must conclude Judge Patrick's order violated the coordinate jurisdiction rule.

Miller's argument that he was nevertheless excused from attending arbitration due to Judge Patrick's order is untenable. We acknowledge that Judge Patrick's order could have caused Miller some confusion. We also acknowledge that Judge Anders did not address Judge Patrick's order, but instead simply ignored it and continued to list Miller's case for arbitration. Nevertheless, Miller does not deny that he received Judge Anders' order, which the trial court entered on November 4, 2021, scheduling an arbitration hearing in this matter on January 20, 2022.

Miller had from early November 2021 to January 20, 2022 to obtain clarification on the discrepancy between Judge Patrick's and Judge Anders' orders. Rather than doing so, Miller's attorney defiantly refused to bring the issue before the trial court, stating in an email to Coulter's attorney:

> 'We will get our trial date after we intentionally fail to show up for that stupid ass arbitration 'scheme' next month. **That is why I am not filing any more motions about it.** Only an idiot would put these cases in arbitration.' . . . 'Plaintiffs do not have to show up to arbitration because the arbitration court has no jurisdiction over their cases that seek more than $50K. So, no matter what, we would not show up to arbitration.'

Trial Ct. Op., 5/26/22, at 3 (emphasis added and citations omitted). Miller's attorney made it abundantly clear that Miller's excuse for not attending his scheduled arbitration was not that he was confused by Judge Patrick's order, nor that he was relying on Judge Patrick's order. Accordingly, the trial court did not abuse its discretion in determining that Judge Patrick's order did not provide Miller with a reasonable explanation or legitimate excuse for failing to appear at arbitration. *See* Pa.R.Civ.P. 3015.

11

This Court recently addressed and rejected the remainder of Miller's arguments that the trial court abused its discretion in denying his petition for relief from its judgment of non pros in *Myers v. Romito* (Pa. Cmwlth., No. 275 C.D. 2022, filed April 18, 2023) (*Myers*). That case was nearly identical to this matter, including the fact that the plaintiffs were represented by Miller's attorney, the defendants shared the same attorney, the complaints alleged incidents of police misconduct, and the complaints were filed on the same date and in the same court. In addition, the conduct that caused the trial court to enter judgments of non pros was identical in both cases (Miller's attorney was even e-mailing the defendants' attorney about his refusal to attend arbitration in both cases).

The only significant difference between these cases is that in *Myers* the trial court judge who handled the plaintiffs' motion to remove their case from mandatory arbitration deferred to Judge Anders' previous decision and denied the plaintiffs' request. Since we addressed the unique issues presented in this case by this procedural difference, we resolve Miller's remaining, identical arguments by incorporation and following our decision in Case Number 275 C.D. 2022.

### III. Conclusion

For the reasons outlined above, as well as for the reasons outlined in this Court's memorandum opinion in *Myers*, the trial court did not abuse its discretion in denying Miller's petition for relief from a judgment of non pros. Therefore, we affirm the trial court's order.

_____
STACY WALLACE, Judge

12

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Anthony Miller,                          :
                        Appellant        :
                                         :
            v.                           : No.  274 C.D. 2022
                                         :
Craig Coulter, Badge # 9208              :

# **O R D E R**

AND NOW, this 18th day of April 2023, the order of the Court of Common Pleas of Philadelphia County, entered in this matter on March 21, 2022, is **AFFIRMED**.

_____
STACY WALLACE, Judge